IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**ANDY KERR**, COLORADO STATE REPRESENTATIVE
**NORMA V. ANDERSON**
**JANE M. BARNES**, MEMBER JEFFERSON COUNTY
BOARD OF EDUCATION
**ELAINE GANTZ BERMAN**, MEMBER STATE BOARD OF
EDUCATION
**PAUL BOOTH**
**ALEXANDER E. BRACKEN**
**WILLIAM K. BREGAR**, MEMBER PUEBLO DISTRICT 70
BOARD OF EDUCATION
**BOB BRIGGS**, WESTMINSTER CITY COUNCILMAN
**BRUCE W. BRODERIUS**, MEMBER WELD COUNTY
DISTRICT 6 BOARD OF EDUCATION
**TRUDY B. BROWN**
**JOHN C. BUECHNER**, PH. D., LAFAYETTE CITY
COUNCILMAN
**STEPHEN A. BURKHOLDER**
**RICHARD L. BYYNY, M.D.**
**LOIS COURT**, COLORADO STATE REPRESENTATIVE
**THERESA L. CRATER**
**ROBIN CROSSAN**, MEMBER STEAMBOAT SPRINGS RE-2
BOARD OF EDUCATION
**RICHARD E. FERDINANDSEN**
**STEPHANIE GARCIA**, MEMBER PUEBLO CITY BOARD
OF EDUCATION
**DICKEY LEE HULLINGHORST**, COLORADO STATE
REPRESENTATIVE
**NANCY JACKSON**, ARAPAHOE COUNTY
COMMISSIONER
**WILLIAM G. KAUFMAN**
**CLAIRE LEVY**, COLORADO STATE REPRESENTATIVE
**MARGARET (MOLLY) MARKERT**, AURORA CITY
COUNCILWOMAN
**MEGAN J. MASTEN**
**MONISHA MERCHANT**, MEMBER UNIVERSITY OF
COLORADO BOARD OF REGENTS
**MICHAEL MERRIFIELD**
**MARCELLA (MARCY) L. MORRISON**
**JOHN P. MORSE**, COLORADO STATE SENATOR
**PAT NOONAN**
**BEN PEARLMAN**, BOULDER COUNTY COMMISSIONER
**WALLACE PULLIAM**

Civil Action No. _____

**FRANK WEDDIG**, ARAPAHOE COUNTY COMMISSIONER
**PAUL WEISSMANN**; and
**JOSEPH W. WHITE**

    Plaintiffs,

  v.

STATE OF COLORADO

    Defendant.

---

## COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

---

### I.  OPENING STATEMENT

1.  This case presents for resolution the contest between direct democracy and representative democracy.  In 1992, Colorado voters adopted by initiative the Taxpayers Bill of Rights ("TABOR"), removing from their own legislature the power to tax and arrogating that power to themselves.  However attractive it might have seemed, this assertion of direct democracy is not permitted under the United States Constitution, which requires all states to have a Republican Form of Government embodied in a representative democracy.

2.  At our nation's birth, some three million citizens acted through their representatives at a constitutional convention to commit the nation to a government of representative democracy, a Republic, and rejected direct democracy.  Today, the Constitution carries the same commitment in a nation of over three hundred million people.  Frustration with the work of legislatures, whether federal or state, may indicate a need for representative institutions to be more effective, but that frustration does not justify or permit resorting to direct democracy.

3.     Since the passage of TABOR in 1992, the State of Colorado has experienced a slow, inexorable slide into fiscal dysfunction.  Deterioration of the state's funding base has been slowed by many attempts to patch, cover over, or bypass the straightjacket of TABOR.  However, events have demonstrated that a legislature unable to raise and appropriate funds cannot meet its primary constitutional obligations or provide services that are essential for a state.

4.     The framers of the federal Constitution prescribed a Republican Form of Government for the nation at large and, in Article IV, Section 4, of the United State Constitution, guaranteed a Republican Form of Government to each state.  The federal statutes creating the Territory of Colorado and then enabling creation of the State of Colorado required that the state have a Republican Form of Government.  The state cannot properly or constitutionally govern itself without adhering to the requirements of a Republican Form of Government, which entails having an effective legislative branch.

5.     In prescribing a Republican Form of Government for the states, the framers of the federal Constitution intended that each state have a government with power exercised through a representative democracy.  James Madison explained in *Federalist 10* the difference between a direct and a representative democracy and the reasons that a representative democracy was essential to the Republic to be established by ratification of the Constitution:

> From this view of the subject it may be concluded that a pure democracy, by which I mean a society consisting of a small number of citizens, who assemble and administer the government in person, can admit of no cure for the mischiefs of faction. A common passion or interest will, in almost every case, be felt by a majority of the whole; a communication and concert result from the form of government itself; and there is nothing to check the inducements to sacrifice the weaker party or an obnoxious individual. Hence it is that such democracies have ever been spectacles of turbulence and contention; have ever been found

3

incompatible with personal security or the rights of property; and have in general been as short in their lives as they have been violent in their deaths. Theoretic politicians, who have patronized this species of government, have erroneously supposed that by reducing mankind to a perfect equality in their political rights, they would, at the same time, be perfectly equalized and assimilated in their possessions, their opinions, and their passions.

A republic, by which I mean a government in which the scheme of representation takes place, opens a different prospect, and promises the cure for which we are seeking. Let us examine the points in which it varies from pure democracy, and we shall comprehend both the nature of the cure and the efficacy which it must derive from the Union.

The two great points of difference between a democracy and a republic are: first, the delegation of the government, in the latter, to a small number of citizens elected by the rest; secondly, the greater number of citizens, and greater sphere of country, over which the latter may be extended.

The effect of the first difference is, on the one hand, to refine and enlarge the public views, by passing them through the medium of a chosen body of citizens, whose wisdom may best discern the true interest of their country, and whose patriotism and love of justice will be least likely to sacrifice it to temporary or partial considerations. Under such a regulation, it may well happen that the public voice, pronounced by the representatives of the people, will be more consonant to the public good than if pronounced by the people themselves, convened for the purpose.

6.      The Colorado Constitution as adopted at the Constitutional Convention in 1876 and continuing until the passage of TABOR fully complied with the federal constitutional requirement for a Republican Form of Government, in part by providing in Article X, Section 2, the requisite  powers for the General Assembly to tax to provide for state expenses.

7.      An effective legislative branch must have the power to raise and appropriate funds.  When the power to tax is denied, the legislature cannot function effectively to fulfill its obligations in a representative democracy and a Republican Form of Government.

8.     The purpose of this case is to seek a ruling that the TABOR amendment to the Constitution of the State of Colorado is unconstitutional because it deprives the state and its citizens of effective representative democracy, contrary to a Republican Form of Government as required under both the United States and Colorado Constitutions.

## II.   PARTIES

9.     Several plaintiffs are described in the caption and in the following paragraphs as holding public office in certain state and local governmental bodies.  The offices held by these plaintiffs are relevant to their standing in the case.  The listing of offices does not imply that the governmental bodies have themselves taken any official position regarding this litigation nor that these plaintiffs speak for those governmental bodies regarding this litigation.

10.     Plaintiff Andy KERR is a Member of the House of Representatives of the Colorado General Assembly, representing District 26, and a social studies teacher in the Jefferson County schools.  In his individual capacity as a citizen of the State of Colorado and in his capacity as a State Representative, he has standing to challenge the constitutionality of the TABOR Amendment.

11.     Plaintiff Norma V. ANDERSON is a former member of and Majority Leader of the Colorado State House of Representatives and the Colorado State Senate, a former director of the Regional Transportation District and a citizen of the State of Colorado.

12.     Plaintiff Jane M. BARNES is a member of the Jefferson County Board of Education, past president of the Colorado Association of School Boards and a citizen of the State of Colorado.

13.     Plaintiff Elaine Gantz BERMAN is a member of the Colorado State Board of Education, a former member of the Denver Public Schools Board of Education and a citizen of the State of Colorado.

14.     Plaintiff Paul BOOTH is a member of the faculty of Fort Lewis College and a citizen of the State of Colorado.

15.     Plaintiff Dr. Alexander E. BRACKEN is a former member of the Colorado Commission on Higher Education, was the Nineteenth President of the University of Colorado and is a citizen of the State of Colorado.

16.     Plaintiff William K. BREGAR is a member of the Pueblo District 70 Board of Education, past President of the Colorado Association of School Boards, and a citizen of the State of Colorado.

17.     Plaintiff Bob BRIGGS is a Councilman of the City of Westminster and a former member of the Colorado State House of Representatives, the Adams County Commission, former director of the Regional Transportation District, and a citizen of the State of Colorado.

18.     Plaintiff Bruce W. BRODERIUS is a member of Weld County District 60 Board of Education, Professor of Education Emeritus and former Dean of Education at the University of Northern Colorado and is a citizen of the State of Colorado.

19.     Plaintiff Trudy B. BROWN is a citizen of the State of Colorado.

20.     Plaintiff Dr. John C. BUECHNER is Councilman in the City of Lafayette and was the Eighteenth President of the University of Colorado. He is Professor Emeritus of the University of Colorado, former Chancellor of the Boulder Campus of the University, former member of the Colorado State House of Representatives, former Mayor and Councilman of the City of Boulder, and is a citizen of the State of Colorado.

21.     Plaintiff Stephen A. BURKHOLDER is former Mayor and Councilman of the City of Lakewood and a citizen of the State of Colorado.

22.     Plaintiff Richard L. BYNY, M. D., is Director of the Center for Health Policy at the University of Colorado Hospital, former Chancellor of the Boulder Campus of the University and a citizen of the State of Colorado.

23.     Plaintiff Lois COURT is a member of the Colorado State House of Representatives representing House District 6 and a citizen of the State of Colorado.

24.     Plaintiff Theresa L. CRATER is a professor at Metro State College of Denver and a citizen of the State of Colorado.

25.     Plaintiff Robin CROSSAN is president of the Steamboat Springs School District RE-2 Board of Education  and a citizen of the State of Colorado.

26.     Plaintiff Richard E. FERDINANDSEN is a former Jefferson County Commissioner and a citizen of the State of Colorado.

27.     Plaintiff Stephanie GARCIA is President of the Pueblo City Board of Education and a citizen of the State of Colorado.

28.     Plaintiff Dickey Lee HULLINGHORST is a member of the Colorado State House of Representatives, representing House District 10, and a citizen of the State of Colorado.

29.     Plaintiff Nancy JACKSON is an Arapahoe County Commissioner and a citizen of the State of Colorado.

30.     Plaintiff William G. KAUFMAN is a member of the Colorado Transportation Commission, a former member of the Colorado State House of Representatives, and a citizen of the State of Colorado.

31.     Plaintiff Claire LEVY is a member of the Colorado State House of Representatives, representing House District 13 and a citizen of the State of Colorado.

32.     Plaintiff Margaret (Molly) MARKERT is a Councilwoman of the City of Aurora, a former member of the Colorado State House of Representatives and a citizen of the State of Colorado.

33.     Plaintiff Megan J. MASTEN is the parent of two school children and a citizen of the State of Colorado.

34.     Plaintiff Monisha MERCHANT is a member of the University of Colorado Board of Regents and a citizen of the State of Colorado.

35.     Plaintiff Michael MERRIFIELD is a former member of the Colorado State House of Representatives and a citizen of the State of Colorado.

36.     Plaintiff Marcella (Marcy) L. MORRISON is a former member of the Colorado State House of Representatives, the El Paso County Commission, the Manitou Springs Board of Education and is a citizen of the State of Colorado.

37.     Plaintiff John P. MORSE is Majority Leader of the Colorado State Senate, representing Senate District 11, and a citizen of the State of Colorado.

38.     Plaintiff Pat NOONAN is a former Arapahoe County Commissioner and a citizen of the State of Colorado.

39.     Plaintiff Ben PEARLMAN is a Boulder County Commissioner and a citizen of the State of Colorado.

40.     Plaintiff Wallace PULLIAM is a former director of the Regional Transportation District and a citizen of the State of Colorado.

41.     Plaintiff Frank WEDDIG is a Arapahoe County Commissioner, a former member of both the Colorado State Senate and the Colorado State House of Representatives, a former member of the Aurora City Council and a citizen of the State of Colorado.

42.   Plaintiff Paul WEISSMANN is a former member of both the Colorado State Senate and the Colorado House of Representatives and a citizen of the State of Colorado.

43.   Plaintiff Joseph W. WHITE is a teacher at ThunderRidge High School and a citizen of the State of Colorado.

44.   Certain plaintiffs in this case are past or sitting elected representatives in the General Assembly of the State of Colorado.  As such, they have a direct and specific interest in securing to themselves, and to their constituents and to the state, the legislative core functions of taxation and appropriation.  Other plaintiffs in this case include officers of counties, districts and municipalities which are dependent, under the state constitution, on the power of the legislature and their own powers to tax and appropriate.

45.   Certain plaintiffs in this case are past or sitting elected officials of counties, cities, and school districts in the State of Colorado, jurisdictions whose abilities to tax are eliminated by TABOR.

46.   Certain plaintiffs in this case are or have been educators employed by the State of Colorado or by various school districts.  In addition to their interests as citizens of the state, they also have a specific interest in assuring that the legislature of the state can discharge its responsibilities to tax for the purpose of adequately funding core education responsibilities of the state as provided in Article IX, Section 2 of the Colorado Constitution.

47.   Certain plaintiffs in this case are citizens of the State of Colorado, having a specific, protectable interest in assuring that their representatives can discharge the inherently legislative function of taxation and appropriation and an interest in assuring that the State of Colorado has a Republican Form of Government, as required by the United States Constitution.

48. All plaintiffs in this case are citizens of the State of Colorado and have rights protectable under the Fourteenth Amendment to the United States Constitution to the equal protection of the laws, including the right to a Republican Form of Government and therewith to a legislative branch with the power to tax.

49. Defendant is the State of Colorado in its capacity to administer the provisions of its Constitution and its laws.

### III.   JURISDICTION AND VENUE

50. Jurisdiction of this case is grounded in 28 U.S.C. § 1331, Federal Question, as this case requires the Court to interpret the provisions of Article IV, Section 4, of the United States Constitution, the "Guarantee Clause," which requires a Republican Form of Government.

51. Jurisdiction of this case is grounded in 29 U. S. C. § 1331, Federal Question, as this case requires the Court to interpret the provisions of Article VI, Section 2, of the United States Constitution, the "Supremacy Clause."

52. Jurisdiction of this case is also grounded in 28 U.S.C. § 1331, Federal Question, as this case requires the Court to interpret the rights of the Plaintiffs under the "Equal Protection" provisions of the Fourteenth Amendment to the United States Constitution.

53. Jurisdiction under 28 U.S.C. § 1331 also lies because this case requires the Court to interpret federal statutes, to wit, The Colorado Territorial Act, 12 Stat. 176 (1861), and the Colorado Enabling Act, 18 Stat. 474 (1875), "An Act To Enable The People Of Colorado To Form A Constitution And State Government, And For the Admission Of The Said State Into The Union On An Equal Footing With The Original States" (hereafter, the "Enabling Act"), under which Congress granted the People of Colorado the authority to form a state subject to requirements that are at issue in this case.

54. Jurisdiction of this case is also grounded in 28 U.S.C. § 1367, as this Court has Supplemental Jurisdiction over such matters as may involve the interpretation of the Constitution of the State of Colorado.

55. Jurisdiction for relief in this case is also grounded in 28 U.S.C. § 1651, the All Writs Act, and 28 U.S.C. § 2201, the Declaratory Judgment Act.

56. The Courts of the United States have jurisdiction to determine a state's compliance with Article IV, Section 4, of the Constitution of the United States, i.e., whether its government is a Republican Form of Government, and to nullify and declare void laws or state constitutional provisions that compromise republican governance.

57. The Courts of the United States have jurisdiction to determine whether TABOR violates the requirement that Colorado have a Republican Form of Government prescribed by Article IV, Section 4, of the Constitution of the United States, the "Guarantee Clause," and the Enabling Act, and that such conflict compels invalidation of TABOR under the Supremacy Clause.

58. The Courts of the United States have jurisdiction to determine whether a state is complying with federal statutes and, particularly, the statute (the Enabling Act) under the terms of which Congress authorized the creation of the State of Colorado and its admission to the Union.

59. The Courts of the United States have jurisdiction to determine whether the citizens of the State of Colorado are being denied the equal protection of the laws because Colorado now fails to provide a Republican Form of Government.

60. Venue of this case is proper in this Court under the provisions of 31 U.S.C. § 1391(b) as all of the Plaintiffs and the Defendant are residents of the State of Colorado.

## IV.   <u>BACKGROUND OF THIS CIVIL ACTION</u>

61.    Article IV, Section 4, of the Constitution of the United States provides that:

"The United States shall guarantee to every State in this Union a Republican Form of Government . . . ."

This "Guarantee Clause" encompasses the assurance that each state shall, as in the case of the government of the United States itself, have legislative, executive, and judicial branches and that the legislative branch, as in the case of the United States itself, shall be empowered to tax and appropriate.

62.    On February 28, 1861, in accordance with Article IV, Section 3, of the United States Constitution, Congress enacted The Colorado Territorial Act, 12 Stat. 176, providing for the organization of and a temporary government for the Territory of Colorado.  That statute specified in Section 4 the establishment of a bicameral "legislative council" and in Section 6 that the power of the legislative council "extend to all rightful subjects of legislation consistent with the Constitution of the United States."

63.    On March 3, 1875, pursuant to Article IV, Section 3 of the United States Constitution, Congress enacted the Colorado Enabling Act.  18 Stat. 474 (1875).  Under the terms of the Enabling Act, the Territory of Colorado was to be admitted to the Union as a state after meeting certain requirements.  Among them was the requirement that the territory convene a Constitutional Convention that would, *inter alia*, adopt on behalf of the people, the Constitution of the United States and draft a state Constitution that "shall be republican in form." 18 Stat. 474, Sections 4.

64.    In compliance with the provisions of the Enabling Act, the Constitutional Convention of the Territory of Colorado met, adopted the Constitution of the United States, and prepared a Constitution then fully compliant with the Enabling Act.  That Constitution of the

proposed State of Colorado did provide for a Republican Form of Government and, in Article V, Section 1, expressly provided that "[t]he legislative power shall be vested in the General Assembly, which shall consist of a Senate and House of Representatives, both to be elected by the People."

65.     Article V of the Constitution of the proposed State of Colorado provided in Sections 31 and 32 for the General Assembly of the State of Colorado to have and execute the exclusive powers to raise and appropriate revenue, powers similar to those of the legislative branch in the Constitution of the United States, and in Section 33 that no monies shall be paid out of the State Treasury "except upon appropriations made by law."

66.     Article X, Section 2, of the Colorado Constitution provides: "The general assembly shall provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of state government for each fiscal year."  This provision was essential to and an integral part of the several provisions of the Colorado Constitution that constituted the state's Republican Form of Government.

67.     Combined with revenues from federal common lands ceded to the state under Section 7 of the Enabling Act, Article X, Section 2, was integral to the scheme for funding public education in the state.

68.     In 1910, the General Assembly proposed and the people adopted an amendment to the Colorado Constitution, with the short title, "Providing for the initiative and referendum." It revised Article V, Section 1(1) of the State Constitution.  That section originally stated that "[t]he legislative power of the state shall be vested in the general assembly consisting of a senate and house of representatives, both to be elected by the people."  The amendment added the following language: "but the people reserve to themselves the power *to propose laws and*

*amendments to the Constitution and to enact or reject the same at the polls independent of the general assembly* and also reserve power at their own option to approve or reject at the polls any act or item, section, or part of any act of the general assembly." Laws 1910 Ex. Sess., p 11; emphasis added. (Subsequent subsections added and amended in 1980 and 1994 elaborate on the initiative and referendum processes.)

69.     Notwithstanding its sweeping terms, this initiative and referendum provision could not lawfully compromise or subtract from the undertakings of the State of Colorado required under the Enabling Act and by the "Guarantee Clause" to have and maintain a Republican Form of Government, necessarily including a legislative branch with the requisite powers to be effective. Section 2 of Article II of the Colorado Constitution then and now expressly recognizes this limitation, stating that the plenary power reserved to the people "to alter or abolish their constitution and form of government" is itself constrained in that "any such change be not repugnant to the constitution of the United States."

70.     By Article IX of the original Colorado Constitution, the proposed State of Colorado undertook to provide its children with a universal system of free public education. Specifically, Section 2 of Article IX provided that "[t]he General Assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the State, wherein all residents of the State between the ages of six and twenty-one years may be educated gratuitously."

71.     On August 1, 1876, President Ulysses S. Grant, pursuant to the Enabling Act, proclaimed the Territory of Colorado to be the State of Colorado, recognizing that the Constitution of the proposed State of Colorado had been duly drawn and ratified by the People of

Colorado, and that compliance with the Enabling Act had been certified by the Territorial Governor, the Chief Justice, and the Territorial United States Attorney.

72.     The certifications of compliance with the Enabling Act and the Proclamation of Statehood by the President could occur only if and because the Colorado Constitution provided for a Republican Form of Government, including a legislature with powers sufficient to fulfill its responsibilities under a Republican Form of Government, including, without limitation, plenary and exclusive powers to raise and appropriate revenues and to provide for taxes to defray the expenses of state government.

73.     For the succeeding 116 years, the State of Colorado and its Constitution complied with the requirements of the Territory Act, the Enabling Act, and Article IV, Section 4, of the United States Constitution, in that the State maintained a General Assembly able to meet its constitutional obligations under a Republic Form of Government, including the powers to raise and appropriate revenues.

74.     On November 3, 1992, the People of the State of Colorado voted to amend the Colorado Constitution by adding Section 20, "The Taxpayer's Bill of Rights" ("TABOR") as an amendment to Article X ("Revenue") of the Constitution.  This amendment became effective by Proclamation of the Governor of Colorado on January 14, 1993.

75.     The TABOR amendment removed from the General Assembly and subordinate political subdivisions the power to tax and raise revenue.  Under the TABOR amendment, the power to tax was to be vested exclusively in the People of Colorado and could be exercised only through a tightly constrained popular voting process.

76.     Paragraph 3 of TABOR, "Election Provisions," and its subparagraphs specify and limit what the People of Colorado may be told in proposals for ballot measures to increase taxes

or otherwise to change the means and methods by which taxes would be imposed.   The limitations of this Paragraph 3 deprived the People of the State of Colorado of access to full and complete facts upon which they might base their votes.

77.     Paragraph 4 of TABOR, "Required Elections," and its subparagraphs vested in the People of Colorado, to be exercised only by popular vote, all of the powers to lay new taxes, to increase tax rates, to change in any manner existing tax structures and in all other respects to raise and collect funds for the operation of the State.   By its incorporation of various terms and definitions, paragraph 4 similarly applied this arrogation of power to popular vote of the people to all other political subdivisions of the State, removing the separate taxing ability of Counties, Municipalities, and School Districts, subject to a vote of the people in such subdivisions to suspend the effect of this provision on Counties, Municipalities, and School Districts.

78.     Paragraph 7 of TABOR, "Spending Limits" and its subparagraphs established a cap on the total amount that the state may spend in any given fiscal year, a cap adjusted annually for the combination of "inflation" plus the "percentage change in state population," but otherwise inviolable and not subject to any findings, determinations, or circumstances that might be found by the State General Assembly or by Counties, Municipalities or School Districts.   To the extent that revenues from tax sources exceed the cap, any excess must be refunded to the People of the State of Colorado or of the affected jurisdiction.

79.     At the General Election in 2005, the voters approved Referendum C, which, *inter alia*, adjusted the spending limit provisions of TABOR by removing the requirement to reset the spending cap each year to the level of the prior year's General Fund spending.   However, a spending limitation remains, adjusted only for inflation and population increases, and causes a gradual, continuing reduction in the ability of the State to defray the necessary expenses of state

government.  This occurs because the annual adjustment only for inflation and population fails to account for the effects that increases in productivity have on wage levels and standards of living, and the impact that in turn has on the cost of personal services that comprise the major portion of the state budget.

80.     Paragraph 8 of TABOR, "Revenue limits" and its subparagraphs prohibit the imposition of new or increased property taxes, prohibit any new local district income tax, and prohibit any new income tax change that is progressive.

81.     The totality of these TABOR provisions removes entirely from the Colorado General Assembly any authority to change state law concerning taxation to replace or increase revenue, and prohibits the General Assembly from raising funds by any other means, including borrowing.  Moreover, the interaction of the provisions of TABOR may actually force existing taxes to be decreased without any action of the General Assembly.

82.     The State, through its Attorney General, has admitted that, because of TABOR, the State can no longer fulfill another critical constitutional obligation, namely the requirement that it educate its children, declaring that "[a]ny funding required by the Education Clause is constrained by TABOR."  (See *Def.'s Mot. for Determination of Questions of Law Pursuant to C. R. C. P. 56(h),* filed by the Attorney General of Colorado, February 25, 2011, in *Lobato et al. v. State of Colorado et al.,* District Court, City & County of Denver, Colorado, 05 CV 4794, at p. 6.)

## V.     COUNT I -  VIOLATION OF ARTICLE IV, SECTION 4 OF THE UNITED STATES CONSTITUTION

83.     A fully effective legislature is an essential component of a Republican Form of Government, as guaranteed to each state by Article IV, Section 4, of the Constitution of the United States.  By removing the taxing power of the General Assembly, the TABOR amendment

renders the Colorado General Assembly unable to fulfill its legislative obligations under a Republican Form of Government and violates the guarantee of Article IV, Section 4, of the United States Constitution.

## VI.   COUNT II  -  VIOLATION OF THE ENABLING ACT

84.     The Enabling Act of 1875, a statute of the United States, set forth the conditions for Colorado statehood, including the requirement that the state have a Republican Form of Government.  The Enabling Act's requirement for a Republican Form of Government entailed having and maintaining a fully effective legislature.  This requirement has not been amended by any subsequent federal law.   The TABOR amendment has made the General Assembly ineffective by removing an essential function, namely the power to tax.  In so doing, the TABOR amendment violates the Enabling Act.

## VII.   COUNT III - VIOLATION OF ARTICLE VI, SECTION 2, OF THE UNITED STATES CONSTITUTION

85.     TABOR is in irresolvable conflict with the "Guarantee Clause" of the United States Constitution and with the undertakings of the State of Colorado as required by the Enabling Act.   Under the Supremacy Clause of Article VI, Section 2, of the United States Constitution, TABOR must yield to the requirements of the "Guarantee Clause" and of the Enabling Act that Colorado maintain a Republican Form of Government.

## VIII. COUNT IV – VIOLATION OF AMENDMENT XIV OF THE UNITED STATES CONSTITUTION

86.     The aforesaid violations of the requirement for a Republican Form of Government deny to Plaintiffs and others similarly situated the Equal Protection of the Laws as guaranteed by Amendment XIV of the Constitution of the United States.

87.    Plaintiffs are also denied their rights under the Colorado Constitution to the protections of a Republican Form of Government that were guaranteed to them under the Enabling Act and in the Colorado Constitution as originally drawn.

## IX. COUNT V – IMPERMISSIBLE AMENDMENT OF COLORADO CONSTITUTION

88.    As a condition for Colorado to become a State and be accepted into the Union under the Enabling Act, the citizens of the State of Colorado undertook to create and maintain irrevocably a Republican Form of Government.

89.    Thus, the expectant citizens of the future State of Colorado, for themselves and for all citizens of Colorado to come, obligated themselves irrevocably to form and to maintain a state government republican in form.   That obligation necessarily inheres in the Colorado Constitution without further elaboration and entails having a legislative branch able to fulfill its responsibilities under a Republican Form of Government.  Section 2 of Article II of the Colorado Constitution expressly recognizes that the people of the state relinquish the power to alter the republican nature of their government.

90.    By accepting the obligations under its Enabling Act and in its Constitution to establish and maintain a Republican Form of Government, the State of Colorado and its citizens irrevocably undertook for themselves and their successors to have and maintain a Constitution embodying a Republican Form of Government. An essential component of a Republican Form of Government is a legislature with sufficient plenary authority to be effectively republican both in form and in actual authority, necessarily including the power to impose taxes and raise revenues necessary to defray the expenses of state government.

91.    Any amendment to the Colorado Constitution must therefore be read as subordinate to the original and perpetual obligation of the state to maintain a Republican Form of Government.  The citizens of the State of Colorado were and are constitutionally disempowered

to amend the state Constitution to derogate or remove power and authority from the legislative branch such that the fundamental nature of the state's Republican Form of Government is compromised or undermined.

92.    The TABOR amendment, in depriving the General Assembly of the power to tax, compromises and undermines the fundamental nature of the state's Republican Form of Government.  In passing the TABOR amendment, a one-time voting majority of the citizens of the State of Colorado violated the superior obligation inherent in the Colorado Constitution to maintain, and the right of all the people to enjoy, a Republican Form of Government.  Therefore, as a matter of state constitutional law, TABOR exceeded the powers retained by the citizens of the State and is unconstitutional and void under the Constitution of the State of Colorado.

93.    The TABOR amendment, in depriving the General Assembly of the power to tax, nullifies the inherent and necessary powers of General Assembly under Article X, Section 2, and Article V, Sections 31 and 32, of the Colorado Constitution, and so violates both those superior provisions of the Colorado Constitution and the guarantee of a Republican Form of Government under Article IV, Section 4, of the United States Constitution.

## X.  PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    For a DECLARATION that the TABOR AMENDMENT is facially unconstitutional and unconstitutional as applied;

2.    For a DECLARATION that the TABOR AMENDMENT is null and void;

3.    For a DECLARATION that the Plaintiffs' rights to and responsibilities under a Republican Form of Government in accordance with Article IV, Section 4, of the United States Constitution have been violated;

4.      For a DECLARATION that the TABOR AMENDMENT violates the Colorado Territorial and Enabling Acts;

5.      For an ORDER prohibiting any state officer from taking any action whatsoever to effect the requirements and purposes of the TABOR amendment; and

6.      For such other and further relief as the Court may find justified.

DATED:  MAY 23, 2011

Respectfully submitted,

/s/ Lino S. Lipinsky de Orlov
Lino S. Lipinsky de Orlov
Herbert Lawrence Fenster
David E. Skaggs

MCKENNA LONG & ALDRIDGE LLP
1400 Wewatta Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: hfenster@mckennalong.com
        llipinsky@mckennalong.com
        dskaggs@mckennalong.com


/s/ Michael F. Feeley
Michael F. Feeley
John A. Herrick
Emily L. Droll

BROWNSTEIN HYATT FARBER SCHRECK LLP
410 17th Street, Suite 2200
Denver, CO  80202-4437
Telephone:  (303) 223-1100
Facsmile:  (303) 223-1111
E-mail:  mfeeley@bhfs.com
        jherrick@bhfs.com
        edroll@bhfs.com

ATTORNEYS FOR PLAINTIFFS