IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-1350-WJM-BNB

ANDY KERR, COLORADO STATE REPRESENTATIVE;
NORMA V. ANDERSON;
JANE M. BARNES, MEMBER JEFFERSON COUNTY BOARD OF EDUCATION;
ELAINE GANTZ BERMAN, MEMBER STATE BOARD OF EDUCATION;
ALEXANDER E. BRACKEN;
WILLIAM K. BREGAR, MEMBER PUEBLO DISTRICT 70 BOARD OF EDUCATION;
BOB BRIGGS, WESTMINSTER CITY COUNCILMAN;
BRUCE W. BRODERIUS, MEMBER WELD COUNTY DISTRICT 6 BOARD OF
EDUCATION;
TRUDY B. BROWN;
JOHN C. BUECHNER, PH.D., LAFAYETTE CITY COUNCILMAN;
STEPHEN A. BURKHOLDER;
RICHARD L. BYYNY, M.D.;
LOIS COURT, COLORADO STATE REPRESENTATIVE;
THERESA L. CRATER;
ROBIN CROSSAN, MEMBER STEAMBOAT SPRINGS RE-2 BOARD OF EDUCATION;
RICHARD E. FERDINANDSEN;
STEPHANIE GARCIA, MEMBER PUEBLO CITY BOARD OF EDUCATION;
KRISTI HARGROVE;
DICKEY LEE HULLINGHORST, COLORADO STATE REPRESENTATIVE;
NANCY JACKSON, ARAPAHOE COUNTY COMMISSIONER;
WILLIAM G. KAUFMAN;
CLAIRE LEVY, COLORADO STATE REPRESENTATIVE;
MARGARET (MOLLY) MARKERT, AURORA CITY COUNCILWOMAN;
MEGAN J. MASTEN;
MONISHA MERCHANT, MEMBER UNIVERSITY OF COLORADO BOARD OF
REGENTS;
MICHAEL MERRIFIELD;
MARCELLA (MARCY) L. MORRISON;
JOHN P. MORSE, COLORADO STATE SENATOR;
PAT NOONAN;
BEN PEARLMAN, BOULDER COUNTY COMMISSIONER;
WALLACE PULLIAM;
FRANK WEDDIG, ARAPAHOE COUNTY COMMISSIONER;
PAUL WEISSMANN; and
JOSEPH W. WHITE;
Plaintiffs,

v.

JOHN HICKENLOOPER, GOVERNOR OF COLORADO, in his official capacity,
Defendant.

## MOTION TO DISMISS PLAINTIFFS' SUBSTITUTE COMPLAINT

Defendant John Hickenlooper, Governor of Colorado, by and through undersigned counsel, hereby moves to dismiss Plaintiffs' Substitute Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## INTRODUCTION

From the very first paragraph of their Complaint, Plaintiffs make clear that this case is an effort to have the courts remove what they see as an obstacle to their policy agenda: direct citizen participation in lawmaking.  They deserve credit for acknowledging that, while their policy preferences lead them to focus their ire on one particular instance of direct democratic participation in Colorado, the Taxpayers' Bill of Rights, their arguments ultimately would require the Court to hold unconstitutional all forms of direct citizen lawmaking:  "This case presents for resolution the contest between direct democracy and representative democracy."[1] Compl. ¶ 1.

[1]*See also id.* at ¶¶ 1 ("direct democracy is not permitted under the United States Constitution, which requires all states to have a Republican Form of Government embodied in a representative democracy"); 2 (asserting that the Constitution "rejected direct democracy" and "does not justify or permit resorting to direct democracy"); 4 (arguing that the state "cannot properly or constitutionally govern itself without adhering to the requirements of a Republican Form of Government"); 5 (asserting that "the framers of the federal Constitution intended that each state have a government with power exercised through a representative democracy"); 8 ("The purpose for this case is to seek a ruling that the TABOR amendment . . . is unconstitutional because it deprives the state and its citizens of effective representative democracy"); 83 (arguing that direct democracy constrains the

Whether representative and direct democracy are actually incompatible, as Plaintiffs argue, or whether they are simply two complementary ways of carrying out a republican government, as the American experience shows, is an interesting subject for philosophic and academic debate,[2] but cannot be resolved in this case. Whether democracy is unconstitutional cannot be decided here both because Plaintiffs' claims constitute nonjusticiable political questions that neither this nor any other court can resolve and because, even if the questions could be resolved by federal courts, these Plaintiffs lack standing to raise them.  The Complaint must be dismissed in its entirety.

## STANDARD OF REVIEW

**I.     Plaintiffs bear the burden of establishing that they have presented a justiciable case or controversy before the Court.**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3), a complaint must be dismissed if the Court lacks subject matter jurisdiction.  If the opposing party challenges the jurisdiction of the court as a matter of law, the court must accept all of the facts

---

"essential component" of a "fully effective" legislature); 90-91 (arguing that by accepting the obligations under its Enabling Act, the State of Colorado and its citizens were obligated to maintain a "republican form of government" exclusively without any direct democracy component "such that the fundamental nature of the state's Republican Form of Government is compromised or undermined").

[2] *See, e.g.*, Robert G. Natelson, *A Republic, Not a Democracy? Initiative, Referendum, and the Constitution's Guarantee Clause*, 80 Tex. L. Rev. 807 (2001); Ann Althouse, *Time for Federal Courts to Enforce the Guarantee Clause? A Response to Professor Chemerinsky*, 65 U. Colo. L. Rev. 881 (1994); Erwin Chemerinsky, *Cases Under the Guarantee Clause Should Be Justiciable*, 65 Univ. Colo. L. Rev. 849 (1994).

pleaded in Plaintiffs' Complaint as true and determine whether those facts state a claim over which the court has jurisdiction. *McDonald v. Kinder Morgan, Inc.*, 287 F.3d 997 (10th Cir. 2000). Because the jurisdiction of federal courts is limited, however, there is a presumption against jurisdiction and "[t]he party invoking federal jurisdiction bears the burden of establishing its existence." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' … will not do." *Id.* (citation omitted).

## ARGUMENT

"'The judicial Power of the United States'" is limited "by the requirement that a litigant must have 'standing to sue' or, more comprehensively, that a federal court

may entertain a controversy only if it is 'justiciable.'" *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 150 (1951) (Frankfurter, J., concurring).  In either situation, the federal courts "will not decide a question unless the nature of the action challenged, the kind of injury inflicted, and the relationship between the parties are such that judicial determination is consonant with what was, generally speaking, the business of the Colonial courts and the courts of Westminster when the Constitution was framed." *Id*.  "[E]ither the absence of standing or the presence of a political question suffices to prevent the power of the federal judiciary from being invoked by the complaining party." *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 215 (1974).

Plaintiffs' complaint suffers from both fatalities because it alleges claims that the United States Supreme Court has unequivocally held present nonjusticiable political questions, and, because Plaintiffs lack standing to bring their complaint. Simply put, these are the wrong plaintiffs alleging the wrong claims against the wrong entity.

## I.      All the claims asserted by Plaintiffs present political questions that the U.S. Supreme Court has long held to be nonjusticiable.

The Plaintiffs ask this Court to do something the Supreme Court has consistently refused to do: overthrow a state law for being too democratic.  Not only

has the Court never done such a thing, it has repeatedly held that claims of this

sort may not be entertained by federal courts.[3]

The "Guarantee Clause," on which Plaintiffs' case depends entirely, provides

that "[t]he United States shall guarantee to every State in this Union a Republican

Form of Government."[4]  U.S. Const. art. IV, § 4.  Over 150 years ago, the Supreme

Court first announced that Guarantee Clause claims are not justiciable in federal

courts.  *Luther v. Borden*, 48 U.S. (7 How.) 1, (1849).  Since then, "the Court has

consistently held that a challenge to state action based on the Guaranty Clause

presents no justiciable question . . . ."  *Baker v. Carr*, 369 U.S. 186, 224 (1962).  *See*

*also Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612 (1937); *Cochran v.*

*Louisiana State Bd. of Educ.*, 281 U.S. 370, 374 (1930); *Mountain Timber Co. v.*

*Washington*, 243 U.S. 219, 235 (1917); *Ohio ex rel. Davis v. Hildebrandt*, 241 U.S.

---

[3] There is some question whether the "political question" doctrine is jurisdictional or
not, but all agree that when it applies it requires dismissal.  *Schroder v. Bush*, 263
F.3d 1169, 1171 n.1 (10th Cir. 2001) (recognizing that "deeply rooted ambiguity in
the nature and justification of the political question doctrine has prevented clear
classification of the appropriate type of dismissal in political question cases" and
"that, in the end, clear classification is immaterial.")

[4] The United States carried out its obligation under this clause in the  Colorado
Enabling Act of 1875, which provides "that the constitution shall be republic in
form."  18 Stat. 474, sec. 4 (1875).  The rationale applied by the Supreme Court to
Guarantee Clause claims therefore applies with equal force to Plaintiffs' claims
brought under the Colorado Enabling Act.  *See Pacific States Telephone &*
*Telegraph Co. v. State of Oregon*, 223 U.S. 118, 136-37, 141, 151 (1912) (dismissing
enabling act claim as a nonjusticiable political question because it rests "upon the
theory that the adoption of the initiative and referendum destroyed all government
republican in form").

565, 569-70 (1915); *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 151;

*Kiernan v. Portland*, 223 U.S. 151, 164-64 (1912).

In *Baker*, the Supreme Court laid out the factors that guide the political

question analysis:

> Prominent on the surface of any case held to involve a political question is
> found [1] a textually demonstrable constitutional commitment of the issue to
> a coordinate political department; or [2] a lack of judicially discoverable and
> manageable standards for resolving it; or [3] the impossibility of deciding
> without an initial policy determination of a kind clearly for nonjudicial
> discretion; or [4] the impossibility of a court's undertaking independent
> resolution without expressing lack of the respect due coordinate branches of
> government; or [5] an unusual need for unquestioning adherence to a political
> decision already made; or [6] the potentiality of embarrassment from
> multifarious pronouncements by various departments on one question.

*Id*. at 217.  The presence of any one or more of these elements designates a question

as political and unfit for resolution in court.  *Id*.

A.  **The asserted "contest between direct democracy and**
    **representative democracy" raises all the hallmarks of a political**
    **question.**

The claims put forth here all depend upon a court's resolution of the

Plaintiffs' claim that direct citizen lawmaking is not "republican" government.  That

issue raises all of the *Baker* factors.  Most plainly, "the Guaranty Clause is not a

repository of judicially manageable standards which a court could utilize

independently in order to identify a State's lawful government."  *Baker*, 369 U.S. at

223 (citation omitted).  The *Baker* Court held that "any reliance on [the Guarantee

Clause] would be futile," *id*. at 227, and maintained that it has steadfastly "refused

to resort to the Guaranty Clause—which alone had been invoked for the purpose—

7

as the source of a constitutional standard for invalidating state action." *Id.* at 223-34 (citing *Taylor v. Beckham (No. 1)*, 178 U.S. 548 (1900) (claim that Kentucky's resolution of contested gubernatorial election deprived voters of republican government held nonjusticiable)).  This has been the uniform result in more than a dozen Supreme Court cases over decades of jurisprudence.  *See* Erwin Chemerinsky, *Cases Under the Guarantee Clause Should Be Justiciable*, 65 Univ. Colo. L. Rev. 849, n.1 (1994) (listing cases).  *See, e.g., City of Rome v. United States*, 446 U.S. 156 (1980); *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608 (1937); *Marshall v. Dye*, 231 U.S. 250 (1913).

Beyond the "lack of judicially discoverable and manageable standards," the claims presented here would entangle the Court in policy determinations it must avoid.  For example, despite their acknowledgement that their case depends on the contention that direct democracy is unconstitutional, Plaintiffs at times indicate that some direct democracy should be upheld, so long as it results in their preferred policy.  So, despite their asserted desire to protect legislative power from the interference of the People, Plaintiffs do not object to democratically-imposed limits on legislative discretion such as mandated, detailed spending increases on particular programs, Colo. Const. art. IX, § 17 (Amendment 23, added by initiative in 2000); debt limits, Colo. Const. art. XI, § 3 (amended by initiative in 1922); prohibitions on certain methods of hunting, Colo. Const. art. XVIII §12b; or even regulation of the detonation of nuclear devices unless "the detonation of that device shall first have been approved by the voters through enactment of an initiated or

8

referred measure," Colo. Const. art. XXVI, § 2.  Though these are all much more direct and intrusive instances of citizen control on legislative discretion, Plaintiffs have no *policy* dispute with them – so they ask the Court to leave them in place. Apparently, they would like the Court to disapprove democracy only when it might limit the legislature's ability to raise taxes and increase revenues.[5]  It would be difficult to imagine a more glaring example of "a policy determination of a kind clearly for non-judicial discretion."  *Baker*, 369 U.S. at 216.

The Supreme Court has also recognized that what satisfies the Guarantee Clause is a question that is committed to another "department" of government: Congress.  *Ohio ex rel. Bryant v. Akron Metro. Park Dist.*, 281 U.S. 74, 79-80 (1930) ("As to the guaranty to every state of a republican form of government, it is well settled that the questions arising under the guarantee clause are political, not judicial, in character, and thus for the consideration of Congress and not the courts.").  Neither Congress nor any other branch of government (nor indeed any other court of which Defendant is aware) has ever questioned, much less invalidated, the long and pervasive use of direct democracy in Colorado and most other states.  *See* http://www.ncsl.org/default.aspx?tabid=16589 (listing state initiative and referendum provisions).  Thus, this Court's attempt to resolve the matter would trigger yet another *Baker* factor by "demonstrat[ing] a lack of the respect due" to Congress and the states.  *Baker*, 369 U.S. at 216.

---

[5] *See* Compl. ¶ 6.

There is also an "unusual need" in this area for adherence to political decisions already made. *See id.* Twenty-six states now use some form of direct democracy, and countless laws and constitutional provisions have been instituted through these mechanisms. http://www.ncsl.org/default.aspx?tabid=16589. The Plaintiffs' argument, if accepted, would call into question all of these provisions, and all of the countless laws enacted under them. *See Pauling v. McNamara*, 331 F.2d 796, 799 (D.C. Cir. 1963) (noting that federal judges have "narrow and limited authority. Our entire System of Government would suffer incalculable mischief should judges attempt to interpose the judicial will above that of the [coordinate branches], even were we so bold as to assume that we can make better decisions.").

Finally, a court pronouncement in favor of Plaintiffs would be in conflict with the views of various state and federal departments on the question presented in the first paragraph of the complaint, whether direct democracy is incompatible with a republican government. As noted above, Congress, which the Supreme Court has declared is the proper federal entity to entertain questions about the republican form of government, has never questioned the practice of state direct democracy in the century of its widespread use. State courts and legislatures have likewise upheld and relied upon citizen-initiated or approved laws. Colorado's Supreme Court in particular has held that it considers the initiative and referendum powers a fundamental right at the very core of a republican form of government that must be liberally construed in favor of the right of the people to exercise them. *See Board of County Comm'rs v. County of Road Users Ass'n*, 11 P.3d 432, 439 (Colo. 2000);

*Margolis v. District Court*, 638 P.2d 297 (Colo. 1981).  The Colorado Supreme Court

has several times declared that TABOR "constitutes an example of the people

exercising their initiative power to enact laws in the specific context of state and

local government finance, spending, and taxation."[6]  *Zaner v. City of Brighton*, 917

P.2d 280, 284 (Colo. 1996) (citing *Bickel v. City of Boulder*, 885 P.2d  215, 226 (1994)

(en banc)).  The Tenth Circuit also recognizes that "[t]he right to initiate legislation

is a unique state-created right," declaring, "[w]e discern few areas so sacrosanct as

the protection of state self-determination."  *Colorado Taxpayers Union, Inc. v.

Romer*, 963 F.2d 1394, 1403 (10th Cir. 1992).

## B. The Supreme Court has specifically held that claims like Plaintiffs', based on citizen initiative power to tax, are nonjusticiable political questions.

That the claims here fit precisely within the factors outlined in *Baker* makes

perfect sense: among the cases cited by the *Baker* Court as exemplifying the

political question doctrine were a number raising the same basic complaints about

---

[6] Even if the Court were to agree with Plaintiffs' notion that republican government requires that only a state legislature have power to make laws, the complaint must still be dismissed because, as a matter of law, citizens (and even courts) can undertake lawmaking duties of the legislature.  *See Salazar v. Davidson*, 79 P.3d 1221, 1232-33, 1236-37 (Colo. 2003); *Armstrong v. Mitten*, 37 P.2d 757, 759-61 (Colo. 1934).  Under Article 1, § 4 of the United States Constitution, redistricting is a duty of the state "legislature".  In *Armstrong*, the Colorado Supreme Court held that an initiated redistricting plan satisfied this requirement.  37 P.2d at 761. In *Salazar*, the court extended this rationale to include the courts.  79 P.3d at 1232-33, 1236-37.  Neither of these decisions has been disturbed.  *See Colorado General Assembly v. Salazar*, 541 U.S. 1093 (2004); *Lance v Coffman*, 549 U.S. 437 (2007) (refusing to address challenges to *Salazar*).  So even if Plaintiffs were correct that only a state's "legislature" can enact laws, these cases require inclusion of the people (not to mention the judiciary) within that concept.

citizen control of tax laws.  *See Pacific States Telephone & Telegraph Co. v. State of Oregon*, 223 U.S. 118 (1912); *State of Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916); *Kiernan v. City of Portland*, 223 U.S. 151 (1912).  The Supreme Court's dismissal of the case in *Pacific States* is particularly instructive because the claims and arguments raised by plaintiffs in there and here are nearly identical.

In 1902, Oregon amended its Constitution to grant its citizens initiative and referendum power.  *Pacific States*, 223 U.S. at 133-34.  The amendment retained an existing clause vesting the exclusive legislative power in a general assembly consisting of a senate and a house of representatives, and added to that provision the following:

> but the people reserve to themselves power to propose laws and amendments to the Constitution, and to enact or reject the same at polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly.

*Pacific* States, 223 U.S. at 133-34.  Colorado's Constitution contains virtually the same language granting its citizens initiative power:

> but the people reserve to themselves the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly and also reserve power at their own option to approve or reject at the polls any act or item, section, or part of any act of the general assembly.

Colo. Const. art. V, § 1.

Pursuant to their initiative power, the Oregon voters passed a law taxing certain corporations that was challenged by Pacific States Telephone & Telegraph Company.  *Pacific States*, 223 U.S. at 135-136.  The attack made in *Pacific States*

against the initiative and tax measure contained substantially the same claims

alleged by Plaintiffs.[7]

The *Pacific States* Court refused to hear the claims, holding that the political

branches have the exclusive task of monitoring the Guarantee Clause and that the

courts could not enforce it.   *Id.* at 150-51.   The Supreme Court focused on the

character of the attack on the statute:

> Its essentially political nature is at once made manifest by
> understanding that the assault which the contention here advanced
> makes is not on the tax as a tax, but on the state as a state.  It is
> addressed to the framework and political character of the government
> by which the statute levying the tax was passed.  It is the government,
> the political entity, which (reducing the case to its essence) is called to
> the bar of this court, not for the purpose of testing judicially some
> exercise of power, assailed on the ground that its exertion has
> injuriously affected the rights of an individual because of a repugnancy
> to some constitutional limitation, but to demand of the state that it
> establish its right to exist as a state, republican in form.

*Id.*

---

[7] Plaintiffs here and in *Pacific States* both asserted claims alleging a violation of the
Guarantee Clause, violations of their respective state enabling acts, a violation of
the Supremacy Clause, and a violation of the Equal Protection Clause.  Plaintiffs'
Count V alleging that the Colorado Constitution has been impermissibly amended
is somewhat novel, but essentially combines the allegations made in *Pacific States'*
Claims IV and V  that "[t]he initiative is in contravention of a republican form of
government. Government by the people directly is the attribute of a pure
democracy, and is subversive of the principles upon which the Republic is founded.
Direct legislation is therefore repugnant to that form of government with which
alone Congress could admit a state to the Union, and which the state is bound to
maintain" and, that "the federal constitution presupposes the maintenance of a
republican form of government and existence of state legislatures which is
destroyed by the initiative process."  *Id.* at 138-39.  Plaintiffs' Count V further
concludes that such an amendment violates a republican government and therefore
constitutes an impermissible amendment of the Colorado Constitution.

The Supreme Court concluded, as it had in *Luther*, that such claims are "political in character" and thus "solely committed by the Constitution to the judgment of Congress." *Id*. at 133.  It found that all of "the issues presented, in their very essence, are . . . within the scope of the powers conferred upon Congress, and not, therefore, within the reach of judicial power . . . ." *Id*. at 151.  The Court consequently dismissed *all* of the claims for lack of jurisdiction.

The Supreme Court has never vacillated from its conclusion that the constitutionality of citizen initiatives and the power of the people to exert control over state tax law thereunder is a nonjusticiable political question.  *See Pacific States,* 223 U.S. 118; *Davis*, 241 U.S. 565; *Kiernan*, 223 U.S. 151.  The Supreme Court has not overturned any of its early decisions and application of the *Baker* factors, as described above, continue to render the claims nonjusticiable.  The decision in *Pacific States* therefore should be binding in this case and demands dismissal of the entire Complaint.

## II.     Plaintiffs lack standing.

Even if their claims were not political questions, Plaintiffs lack standing to bring them against the Governor.  The requirement that a plaintiff have standing "is grounded in Article III of the U.S. Constitution, which restricts federal court adjudication to actual cases or controversies." *Utah v. Babbitt,* 137 F.3d 1193, 1201 (10th Cir. 1998).  As one of the various justiciability doctrines, the requirement of standing ensures that federal courts address only concrete disputes between parties with present, adverse interests. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-

49 (1967).  The Tenth Circuit has recognized "[t]he right to initiate legislation is a unique state-created right" that presents "an especially compelling federal concern that dictates careful attention to the threshold case or controversy requirement of standing." *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1403 (10th Cir. 1992).

### A. Plaintiffs' general grievance against direct democracy does not suffice to establish standing.

An injury in fact, an essential element required to establish constitutional standing, "is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical." *Lujan*, 504 U.S. 555, 560 (1962) (citations and internal quotation marks omitted). Therefore the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573-574).

A clearer case for application of this rule would be hard to imagine. Plaintiffs are 34 individual citizens of the State of Colorado.  Compl. ¶¶ 10-43.  Regardless of their present and past professional positions within the public sector, Plaintiffs bring this suit in their individual capacities.  Compl. ¶9.  Although the Plaintiffs allege they have been harmed by use of the initiative power to limit the legislature's

ability to raise taxes and increase revenue without voter approval, the Complaint alleges no more than the inchoate threat that TABOR, enacted in 1992, has caused the State of Colorado to experience "a slow, inexorable slide into fiscal dysfunction" where "the legislature cannot function effectively to fulfill its obligations in a representative democracy and a Republican Form of Government." Compl. ¶¶ 3, 7. In other words, they do not describe any concrete or particularized injury in fact suffered by Plaintiffs themselves that is not "a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws." *Lance*, 549 U.S. at 439.  Plaintiffs are also "seeking relief that no more directly and tangibly benefits [them] than it does the public at large." *Id.*

Plaintiffs' complaints are the epitome of "generalized grievances" about the policy results arrived at under Colorado's Constitution.  Plaintiffs may have more difficulty persuading their fellow citizens to go along with their policy desires than to lobby a legislature.[8]  But that is not a cognizable injury in fact.

Moreover, the Guarantee Clause and the Enabling Act create rights and obligations between the State of Colorado and the United States.  Neither in any

---

[8] Plaintiffs' alleged injury is also conjectural and hypothetical, as they have not alleged any reason to believe they will be able to prove that the legislature would have been more amenable to raising taxes and spending than the People have been. In fact, measures proposed for approval by the voters have had fairly strong track records. *See, e.g.,* Referendum C, ch. 355, 2005 Colo. Sess. Laws 2323 (codified as amended at C.R.S. § 24-77-103.6 (2011)).  *See also Mesa County Board of County Comm'rs v. State of Colorado*, 203 P.3d 519 (Colo. 2009) (noting that most school districts had opted out of certain revenue limits).

way suggests a legal right of individuals to obtain judicial relief for their general

grievances against the results of the initiative process, and certainly not relief

against a State.[9]  As the First Circuit recently held, "the Guarantee Clause makes

the guarantee of a republican form of government *to the states*; the bare language of

the Clause does not directly confer any rights on individuals vis-à-vis the states."

*Largess v. Supreme Judicial Court for the State of Massachusetts*, 373 F.3d 219, 225

n.5 (1st Cir. 2004) (emphasis in original) *cert. denied*, 543 U.S. 1002 (2004).

### B. The Plaintiffs cannot show that the harms they allege is caused by direct democracy or that a ruling in their favor would redress those harms.

Plaintiffs also fail to establish the second and third prongs of standing:

causation and redressability.  *See Lujan*, 504 U.S. at 560-61.  Even if the Court

were to agree that Colorado suffers from "fiscal dysfunction," Plaintiffs cannot show

it is caused by direct democracy or that a ruling in their favor would redress this

alleged problem.[10]  The complaint offers no more than "naked assertion[s] devoid of

further factual enhancement," *Iqbal*, 129 S.Ct. at 1949 (quotations and citations

omitted), to support the idea that democratic citizen oversight is the cause of the

---

[9] It is plausible that a State might have standing to assert a Guarantee Clause claim against the United States, and this is the possibility that Justice O'Connor appeared to be leaving open under the facts of *New York v. United States*.  *See* 505 U.S. 144, 183 (1992).  However, there is no hint in *New York* or any other Supreme Court case that individuals may bring claims against states under that clause.  This Court, therefore, is bound by the longstanding and repeated rule that the courts cannot resolve claims like Plaintiffs'.

[10] *See, e.g.*, Jennifer Steinhauer, <u>Debt Bill is Signed Ending a Fractious Battle</u>, N.Y. Times, Aug. 2, 2011, at A1.

alleged dysfunction or that the remedy they seek here would redress their alleged injury.

The federal courts need not interfere with Colorado's governmental system because there are less drastic and fully adequate means for Plaintiffs to obtain their relief.  Most obviously, Plaintiffs are empowered (by the very right to initiative and referendum they would have the courts eliminate) to repeal any constitutional provision they oppose, or to repeal the right to initiative and referendum entirely.  Or they can take smaller steps, as has been done repeatedly, to loosen the limits to which they object.[11]  It is not proper for the federal courts to restructure Colorado's government, nor is it necessary.  The Plaintiffs can obtain the relief they seek elsewhere.[12]

Because Plaintiffs fail to establish standing to assert their claims against the Governor the entire Complaint must be dismissed.

## III.   Plaintiffs fail to state an equal protection claim under the 14th Amendment or a claim for "Impermissible Amendment."

_____

[11] *See* examples cited *supra* note 8.

[12] This point was highlighted by Judge Posner in a Seventh Circuit decision regarding the nonjusticiability of the Guarantee Clause:

> Not only is there no federal judicial remedy for the plaintiffs' grievance; there is a political remedy: amend the Wisconsin constitution. . . . If the people want to reduce the governor's power vis-á-vis the legislature's they will ratify the proposed amendment, just as they ratified only a year ago the amendment that ended his power to create new words by deleting individual letters. There is no need to involve the federal courts in this affair and no legal basis for doing so.

*Risser v. Thompson*, 930 F. 2d 549, 555 (7th Cir. 1991), *cert. denied*, 502 U.S. 860 (1991).

Plaintiffs' fourth claim alleges that they are being denied equal protection under the Fourteenth Amendment because Colorado fails to provide a republican form of government. Even if Plaintiffs had standing to bring this claim, they cannot use it to turn their otherwise non-justiciable question into a justiciable one. This too was tried and rejected in *Pacific States. See* 223 U.S. 118, 137, 151. Even if it were justiciable, it would nevertheless have to be dismissed for failure to state a claim upon which relief may be granted.

## A. Direct democracy does not violate the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (internal quotes and citations omitted). "An equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavares*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citation omitted). To state an equal protection claim, Plaintiffs must at a minimum allege that the State provided either differential treatment based on a suspect classification or denied Plaintiffs a fundamental right. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).

Plaintiffs make no allegation that they are members of a constitutionally protected class or are being treated differently than other similarly situated people in Colorado. Colorado's constitution does not make any classifications among

similarly situated persons as it applies equally to all the citizens in the state, and therefore does not afford Plaintiffs disparate treatment.  Being a resident of Colorado is not a protected class for purposes of the Equal Protection Clause.  Even if it were, Plaintiffs cannot explain how Colorado could extend its jurisdiction outside its borders so as to treat members of this class similarly to residents outside Colorado.  If anything, this claim highlights that the proper defendant in a case of this sort is the federal government.

To the extent Plaintiffs are trying to assert a claim under *Reynolds v. Sims*, 377 U.S. 533 (1964), it is similarly unavailing.  The "one-person, one-vote" requirement announced in that case has no applicability to the allegations here.  Under that doctrine, malapportionment, or vote dilution, is unconstitutional.  *Id*. at 562.  In other words, it "requires that each qualified voter must be given an equal opportunity to participate" in elections.  *Hadley v. Junior College Dist.*, 397 U.S. 50, 56 (1970).  Plaintiffs have not alleged that they do not have the opportunity to participate in either elections for their representatives or in elections held under any of Colorado's direct democracy provisions, including TABOR.  Nor have they alleged any vote dilution or malapportionment.  Rather than too diluted, what they have alleged is that they and their fellow citizens' votes in Colorado are too strong.  This is not a cognizable claim under *Reynolds*.[13]

---

[13] *Lucas v. Forty-Fourth General Assembly* does hold that approval by citizen initiative cannot save an otherwise malapportioned system.  377 U.S. 713, 736

Plaintiffs' claims are much more similar to challenges to super-majority voting requirements or other deviations from pure majority legislative rule.  Such claims have been consistently rejected by the Supreme Court.  *Gordon v. Lance*, for example, is almost precisely on point.  At issue there was a state law that prevented a city from incurring bonded indebtedness or increasing taxes except by approval of 60 percent of voters in a referendum.  403 U.S. 1, 6 (1971).  The Court expressly rejected the claim that this violated the Equal Protection Clause.  *Id.*  The only potentially colorable aspect of that law – the supermajority requirement – is not present in Colorado, and thus this claim must fail under *Gordon.  See also Town of Lockport v. Citizens for Comm. Action*, 430 U.S. 259 (1977) (upholding referendum requiring approval of two sets of voting groups).  Allowing citizens to vote on the laws that govern them does not deny them equal protection of the laws – it enhances it.

### B. Plaintiffs fail to state a claim for "impermissible amendment" and to establish the Court's jurisdiction over it.

Plaintiffs' fifth claim, for "Impermissible Amendment," also fails to state an actionable claim.  As discussed above, this claim echoes Claims IV and V made in *Pacific States*, and further reasserts that the taxing initiative violates a republican form of government and thus impermissibly amends the Colorado Constitution.  It also presents a nonjusticiable political question under *Pacific States* and *Baker*.

---

(1964).  But that case does nothing to call into question the general legitimacy of initiatives or referenda as lawmaking devices in the states.

This Court would have no supplemental jurisdiction in any event since this and all of the other federal claims present nonjusticiable questions that must dismissed.  28 U.S.C. § 1367(c)(3); *see also Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

Should the Court reach the issue, it would still have to dismiss the claim.  As explained above, the Colorado Supreme Court considers the initiative and referendum powers a fundamental right at the very core of a republican form of government.  *See Board of County Comm'rs v. County of Road Users Ass'n*, 11 P.3d 432, 439 (Colo. 2000); *Margolis v. District Court*, 638 P.2d 297 (Colo. 1981).  While it has at times limited the reach of TABOR, *see, e.g.*, *Mesa County*, 203 P.3d 519, the Colorado Supreme Court has never questioned its general structure.  *See, e.g., id.*, *Zaner v. City of Brighton*, 917 P.2d 280, 284 (Colo. 1996); *Bickel v. City of Boulder*, 885 P.2d  215, 226 (1994).  Even assuming the Plaintiffs' alleged facts are true, Claim V therefore does not state a claim on which relief may be granted.

\* \* \*

"[T]he Framers 'did not make the judiciary the overseer of our government.'" *Dames & Moore v. Regan*, 453 U.S. 654, 660 (1981) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 594 (1952)).  Since 1912, the citizens of Colorado, like most other states, have structured their constitution to allow for citizen lawmaking.  Through this power, Colorado citizens, like those of other states, have

exercised control over all areas of policy, including taxation and revenue.  Plaintiffs now ask this Court to hold that this system is overly democratic.

Whether that is so is an interesting question for political theorists, professors, and dinner-table debates, and it is one in which the People of Colorado and, yes, their representatives have been thoroughly engaged.[14]  Plaintiffs are respected and influential citizens of Colorado – the proper forum for them to exert that respect and influence to bring about the change they believe in is the public debate, not in court.  It is quite possible that this political debate will lead to significant alterations in the democratic process in Colorado, perhaps even changes similar to those the Plaintiffs ask the Court to impose unilaterally.  Interesting as the debate is, it is not one that the federal courts can resolve.  The People of Colorado and their representatives can and will resolve it for themselves.

---

[14] *See, e.g.*, Colorado Senate Bill SCR11-001 (making changes to the state constitution related to ballot measures including: an increase of percentage approval by 10 percent; the requirement of appointment of signatures for a petition to be geographically distributed based on a described formula; and in increase from simple majority to a two-thirds majority vote of all members of each house of the general assembly).

## CONCLUSION

The Governor respectfully requests that this Court dismiss Plaintiffs'

Complaint in its entirety.

*s/ Daniel D. Domenico*

DANIEL D. DOMENICO
Solicitor General
BERNIE BUESCHER
Deputy Attorney General
MAURICE G. KNAIZER*
Assistant Deputy Attorney General
MEGAN PARIS RUNDLET*
Assistant Attorney General

Attorneys for Defendant

1525 Sherman Street, 7th Floor
Denver, CO 80203
Telephone: 303-866-5163
FAX: 303-866-5443
E-Mail:  dan.domenico@state.co.us
          bernie.buescher@state.co.us
          maurie.knaizer@state.co.us
          megan.rundlet@state.co.us

## CERTIFICATE OF SERVICE

This is to certify that on the 15th day of August, 2011, I electronically filed the foregoing ***MOTION TO DISMISS PLAINTIFFS' SUBSTITUTE COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

David Evans Skaggs
McKenna Long & Aldridge, LLP-Denver
1400 Wewatta Street #700
Denver, CO 80202-5556

Emily L. Droll
Brownstein Hyatt Farber Schreck, LLP-Denver
410 17th Street #2200

Denver, CO 80202-4432
Herbert Lawrence Fenster
McKenna Long & Aldridge, LLP-Denver
1400 Wewatta Street #700
Denver, CO 80202-5556

John A. Herrick
Brownstein Hyatt Farber Schreck, LLP-Denver
410 17th Street #2200
Denver, CO 80202-4432

Lino S. Lipinsky de Orlov
McKenna Long & Aldridge, LLP-Denver
1400 Wewatta Street #700
Denver, CO 80202-5556

Michael F. Feeley
Brownstein Hyatt Farber
    Schreck, LLP-Denver
410 17th Street #2200
Denver, CO 80202-4432
303-223-1100

_s/ Thomas R. Bovee_
THOMAS R. BOVEE
Public Officials Unit
State Services Section
Colorado Attorney General's Office