IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01350-WJM-BNB

ANDY KERR, et al.,

      Plaintiffs,

v.

JOHN HICKENLOOPER, GOVERNOR OF COLORADO, in his official capacity,

      Defendant.

_____

**PLAINTIFFS' BRIEF IN RESPONSE TO THE COURT'S ORDER
FOR BRIEFING ON QUESTIONS REGARDING STANDING**
_____

      Plaintiffs respectfully submit the following brief in response to this Court's Order (ECF

No. 70) entered on February 17, 2012.

## INTRODUCTION

      The Court has ordered additional briefing on Plaintiffs' standing to bring this lawsuit,

posing five specific questions (the "Questions"). Plaintiffs' responses to the five Questions

follow, preceded by introductory authority to provide a conceptual framework for the standing

issue.

      Plaintiffs are described in various categories, including Colorado legislators and local

government officials, educators and education officials, and citizens of the State of Colorado.

*See* First Am. Substitute Compl. for Injunctive & Declaratory Relief (ECF No. 36)

("Complaint"), ¶¶ 43-46. Some of the Questions are targeted at the standing of one or more

specific category of Plaintiffs. Plaintiffs need only show that one group of Plaintiffs has standing

to bring this case, however. If standing exists for one Plaintiff, it means standing exists for all of

them.  *See*, *e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Village of Arlington Heights v.*

*Metro. Housing Dev. Corp.*, 429 U.S. 252, 263-64 (1977).

     *Allen v. Wright*, 468 U.S. 737 (1984), provides a helpful primer on standing

jurisprudence.  The Supreme Court explained in *Allen* that the criteria for standing are drawn

from the basic requirement for a "case or controversy" prescribed in Article III.  "The case-or-

controversy doctrines state fundamental limits on federal judicial power in our system of

government."  *Id.* at 750.  "In essence the question of standing is whether the litigant is entitled to

have the court decide the merits of the dispute or of particular issues."  *Id.* at 750-51 (citation

omitted).  The opinion continues:  "The requirement of standing, however, has a core component

derived directly from the Constitution.  A plaintiff must allege personal injury fairly traceable to

the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

*Id*. at 451, citing *Valley Forge Christian Coll. v. Americans United for Separation of Church &*

*State, Inc.*, 454 U.S. 464, 472 (1982).

     The standing criteria stated in *Allen* are essentially the same as those set out a few years

later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), yet are arguably better

suited than the *Lujan* analysis to the circumstances underlying this case.  As explained below,

Plaintiffs have suffered individuated injury that is directly traceable to the Taxpayers' Bill of

Rights, Colo. Const. art. X, § 20 ("TABOR"), in disabling them as officeholders and in the loss

of their constitutional rights and protections as citizens – injuries that would be cured by

invalidating TABOR.  *See infra* p. 7.  These Plaintiffs – whether the officeholders, the citizens,

or the educators – have met the "case or controversy" standing threshold for the courts of the

United States to hear their claims under Article III of the United States Constitution.

The effects of TABOR alleged in the Complaint are straightforward in speaking to the criteria of causation or traceability and redressability.  There is no question that TABOR has caused the conditions complained of:  the loss of the ability of the officeholder Plaintiffs to exercise the powers their offices would possess absent TABOR; and the loss by all Plaintiffs of their rights, privileges, and responsibilities under a Republican Form of Government.  *See infra* pp. 4-14.  Similarly, there can be no question that the success of this lawsuit and the invalidation of TABOR would restore those official powers and those rights, privileges, and responsibilities.

The Court's concerns expressed in ordering this briefing have primarily to do with the first criterion – sufficient injury to the protected rights of Plaintiffs so they have the kind of direct stake in the outcome of the case to justify federal court jurisdiction.  In that regard, to summarize the responses to the Questions:

1. *Raines v. Byrd*, 521 U.S. 811 (1997), does not control this case in precluding legislator (or officeholder) standing; rather, *Coleman v. Miller*, 307 U.S. 433 (1939), is authority to afford standing because the legislator and officeholder Plaintiffs have suffered injuries even more direct and more severe than those suffered by the plaintiffs in *Coleman*.

2. *Lance v. Coffman*, 539 U.S. 437 (2007), does not control to preclude citizen standing; *Largess v. Supreme Judicial Court*, 373 F.3d 219 (1st Cir. 2004), and *Branson v. Romer*, 161 F.3d 619 (10th Cir. 1998) ("*Branson II*"), are authority to afford standing because, by their claims under the Guarantee Clause, U.S. Const. art. IV, § 4 (the "Guarantee Clause"), and under the Colorado Enabling Act, Act of March 3, 1875, ch. 139, 18 Stat. 474 § 4 (the "Enabling Act"), the Plaintiffs here are situated similarly to the plaintiffs in *Largess* and to those in *Branson*.  *Initiative & Referendum Inst. v. Walker*,

450 F.3d 1082 (10th Cir. 2006), provides additional authority to find standing: the chilling of plaintiffs' political rights there parallels the denial of Plaintiffs' political rights here.

3. & 4. The educator Plaintiffs have a distinct claim to standing, relying on *Largess* and *Walker*.

5.      While there is a sufficient basis to find standing on the grounds explained in the responses to Questions 1 through 4, the Court may:  (a) choose to proceed to the merits, but with leave to Defendant later to renew his Motion to Dismiss Plaintiffs' Substitute Complaint (ECF No. 18); or (b) grant Plaintiffs leave to amend their Complaint to plead additional facts to support standing.

## ARGUMENT

**QUESTION 1.  GIVEN THE U.S. SUPREME COURT'S DECISION IN *RAINES V. BYRD*, 521 U.S. 811 (1997), DO THE PLAINTIFFS WHO ARE CURRENT OR FORMER LEGISLATORS HAVE STANDING TO PURSUE THIS ACTION IN THAT CAPACITY?**

There are numerous reasons why *Raines* is not controlling.  The standing issue in *Raines* was treated with a mix of analyses, none of which pertains here.

In *Raines*, the Court explained that its exacting treatment of standing was attributable to facts that presented a classic separation of powers problem.  The *Raines* plaintiffs sought to have Article III courts vindicate the rights of Congressional plaintiffs who claimed to have been wronged when their Article I colleagues unconstitutionally surrendered congressional spending prerogatives to the Article II executive.  *Raines* therefore speaks primarily to separation of powers concerns.  The Court noted that "our standing inquiry has been especially rigorous when

4

reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.*" *Id.* at 819-20.[1]

*Raines*-type cases are predicated on a situation where the "power" sought to be vindicated before the Article III branch is exclusively housed in the Article I branch. By that reasoning, legislators who lose a vote in their Article I institution cannot try to undo it by enlisting the aid of Article III courts. Unlike *Raines*, Plaintiffs' challenge to TABOR involves no separation of powers issue to warrant a more exacting standing analysis.

This case involves no dispute that implicates another branch of government. Plaintiffs here do not challenge the power of the Executive. Rather, the question is whether TABOR impermissibly altered the fundamental structure of Colorado government to the particular detriment of the officeholder Plaintiffs.

Plaintiffs have been injured by the wholesale removal of the power to raise the revenue required to meet the needs of the state. *See* Colo. Const. art. X, § 2. In contrast, the plaintiffs in *Raines* complained about a diminution of their institutional power due to the transfer of some of their institution's constitutional appropriations power to the Executive under the Line Item Veto Act, Pub. L. 104-130, 2 U.S.C. §§ 691-92.

There is no parallel here. TABOR did not just diminish the revenue-raising power of legislators and officeholders; TABOR *eliminated* it. Unlike in *Raines*, the officeholders in this case cannot consider a vote to raise revenue *at all*. What has been "lost" in the instant case is not *a* vote. The issue here is the *denial* of any ability to carry out the legislative responsibility to address – to have even an opportunity to vote on – the fundamental question of raising revenue.

---

[1] The separation of powers aspect of the standing analysis in *Raines* and other cases is well examined in Note, *Reinterpreting Raines: Legislator Standing to Enforce Congressional Subpoenas*, 98 Georgetown L. Rev. 1165, 1169-74 (2010); *see also Kucinich v. Bush*, 236 F. Supp. 2d 1, 6-8 (D.D.C. 2002).

This is not a second bite at the apple, as in *Raines*, much less the third bite at the apple involved in *Lance* (discussed at length, *infra* pp. 9-11).  No, the Plaintiffs here have no apple to bite at all.  They are constitutionally starved.

It is critical that the *Raines* Court distinguished the diminution of legislative power being challenged from the absolute nullification of legislative power at issue in *Coleman*.  *Raines* went to pains to distinguish, but did *not* overrule, the standing for legislator plaintiffs found in *Coleman, see Raines*, 521 U.S. at 823, a point underscored by Chief Justice Rehnquist in footnote 7.  *Id.* at 824 n.7.  (It is pertinent in the present context to note that Plaintiffs are, as in *Coleman*, *state* officials.  *Cf. Coleman*, 307 U.S. at 436 with Complaint, ¶¶ 9, 10, 13, 16, 22, 24, 26, 28, 29, 31, 32, 36, 40, 43, 44.  Thus, there is no issue of *federal* separation of powers that was central to the decision in *Raines*.)

*Raines* analyzed the *practical* import of *Coleman* as turning on whether a legislative action did or did not go into effect.  *See Raines*, 521 U.S. at 822-23.  Here, of course, TABOR completely precludes legislative action – a circumstance that should make *Coleman*'s reasoning apply *a fortiori.*

The issue in *Coleman* was vote nullification.  That makes *Coleman* a closer case than *Raines* to Plaintiffs' challenge to TABOR.  However, the facts here are much more compelling than the facts in *Coleman*.  Here, rather than a narrow or single instance of vote nullification, there has been a complete elimination of Colorado legislators' right to legislate at all on the subject of taxes.  For Plaintiffs, their votes have not been diluted; such votes cannot even happen.

The *Raines* Court noted several other factors that differentiate it from this case.  It gave weight to the fact that the legislator plaintiffs there had other recourse to regain their lost power.  That is, they could always try to repeal the Line Item Veto.  *See id.* at 829.  The legislator

Plaintiffs have no such recourse.[2]  Finally, in *Raines*, the Court foreshadowed the successful challenge to the Line Item Veto that followed the next year in *Clinton v. New York,* 524 U.S. 417 (1998).  It recognized that the challenge brought in *Raines* would not be the only opportunity to contest the unconstitutionality of the Line Item Veto.  *See Raines,* 521 U.S.at 834.

In light of the factors at play in *Raines*, it is important to examine standing not only of those Plaintiffs who are legislators, but also of those who hold other elected offices.  TABOR has deprived the taxing powers and constrained the spending powers of *all* Colorado elected officials, from state legislators to county commissioners to city councilors to boards of education.  *See* Colo. Const. art. X, § 20.  The disablement of the officeholders in this case is not limited to tax legislation.  The deprivations and constraints imposed by TABOR directly affect the ability of each of these officials to carry out their constitutional and statutory responsibilities with regard to:

- Scheduling elections regarding fiscal matters (TABOR § 3);

- Levying taxes and setting tax rates (TABOR §§ 4, 8);

- Establishing emergency reserves (TABOR § 5);

- Spending to meet the needs of their jurisdictions (TABOR § 7); and

- Complying with state-mandated programs (TABOR § 9).

TABOR has therefore directly injured the officeholder Plaintiffs and, derivatively, their constituents.  Even if they mustered unanimous votes, these officeholders would be disempowered from fulfilling their republican responsibility to meet the needs of their jurisdictions, whether state or local.

---

[2] The Court in *Lucas v. Forty-Fourth Gen. Assembly,* 377 U.S. 713, 736 (1964), pointed out that it is no recourse for those whose constitutional rights have been infringed to ask the voters to repeal an unconstitutional law.

In sum, this case is analogous to *Coleman* rather than to *Raines*. The challenge to TABOR is not in any way an inter- or intra-branch dispute. Plaintiffs here are state and local, not federal, officials. TABOR does much more than dilute or nullify *a* vote; it precludes *any* vote on taxes.

This is especially true for the state legislators. They are placed in violation of the clear mandate in Article X, section 2 of the Colorado Constitution: "The general assembly shall provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year."[3] Colo. Const. art. X, § 2.

Finally, as stated in *Allen*, if standing is about determining whether a plaintiff is the proper party to bring a suit, the inquiry here should be whether *these* Plaintiffs are the proper (or, at least, *some* of the proper) people to bring this case. *See Allen,* 468 U.S. at 750-51. Are they "entitled to have the court decide the merits of the dispute or of the particular issues?" *Id.* No one else in Colorado can possibly claim to be more directly or significantly aggrieved by TABOR. Defendant's suggestion that no plaintiff could have standing in federal court to challenge TABOR – or even to challenge the wholesale abolition of the Colorado General Assembly – would render meaningless both the Guarantee Clause and the parallel language in the Enabling Act.

---

[3] Article IX, Section 2 of the Colorado Constitution remains essential to meeting the state's educational obligations under the Constitution Colorado enacted in compliance with the Enabling Act. *See* Colo. Const. art. IX, § 2 (the education clause). The Enabling Act devotes three of its fourteen sections to the educational needs of the proposed new state. *See* Enabling Act, §§ 7, 10, 14. Whatever TABOR may assert in subsection (1) about superseding inconsistent provisions of the state constitution, under the Supremacy Clause, U. S. Const. art. VI, § 2, TABOR may not override requirements the state is obliged to maintain pursuant to the federal Enabling Act. *See* Complaint, Count III, ¶ 84.

**QUESTION 2.  GIVEN THE U.S. SUPREME COURT'S DECISION IN *LANCE V. COFFMAN*, DO PLAINTIFFS AS CITIZENS OF COLORADO HAVE STANDING TO PURSUE THIS ACTION IN THAT CAPACITY?**

As noted in the Introduction, *see supra* p. 3, the Questions focus on whether Plaintiffs in general (or certain categories of Plaintiff, *e.g.*, legislators) have suffered the kind of legal injury that is recognized for purposes of standing.   *Lance* is distinguishable both in the type of harm alleged and in the legal redress sought, and does not bar standing for the citizen Plaintiffs to bring this action.

In *Lance*, four plaintiffs brought a collateral challenge to a decision by the Colorado Supreme Court that had invalidated a redistricting plan passed by the legislature and had approved a redistricting plan created by state courts.  *See Lance*, 549 U.S. at 428, 441.  None of the *Lance* plaintiffs had participated in that state court litigation or in the legislative process, however.  *See id.*  Nonetheless, in the collateral proceeding in federal court, they attempted to assert that the state court decision violated the Elections Clause of the United States Constitution. *See id.* at 438.

The Supreme Court found that the *Lance* plaintiffs had no particularized stake in the litigation and so lacked standing to bring their Elections Clause claim.  "The only injury plaintiffs allege is that the law – specifically the Elections Clause – has not been followed.  This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."  *Id.* at 442.

The *Lance* plaintiffs wanted to reopen and invalidate a court decision that was already final and that had overturned previously enacted legislation.  *See id.* at 438.  In effect, they wanted a *third* "bite at the apple."  The redistricting plan at issue was created by a Colorado state court; it was re-drawn by the legislature and signed into law by the Governor; and that second plan was challenged by Colorado's Attorney General and ruled unlawful by the Colorado

Supreme Court.  *Id.*  Throughout these several proceedings, the *Lance* plaintiffs did nothing.

They were bystanders.  Only after the Colorado Supreme Court decided the case did the *Lance*

plaintiffs come forward in an attempt to overturn the court's decision.  *Id.*

By comparison, Plaintiffs are not bystanders.  They have not sat out prior or collateral

proceedings, judicial or legislative, in which their claims might have been addressed.   Indeed,

theirs is the first direct challenge to the validity of TABOR.  This case presents the first bite at

the constitutional apple.

*Lance* is further distinguishable because the harm alleged by the *Lance* plaintiffs was

based entirely on a generalized, quasi-appellate claim that the case before the Colorado Supreme

Court was wrongly decided.  *See id.*  The United States Supreme Court properly found that

"harm" was not concrete or particularized enough to confer standing under *Lujan*, 504 U.S. at

560-61.  *See Lance*, 549 U.S. at 439.  The allegedly erroneous Colorado Supreme Court decision

had no direct impact on them.  *See id.* at 441-42.  Individual citizens not parties to a case may

object to a decision made by a state Supreme Court, but they usually do not have any right to

challenge it in federal court.

More on point, there is no suggestion in *Lance* that the Elections Clause was intended to

afford any rights to *individuals*.  By its terms, it speaks to the prerogatives of state legislatures:

"The Times, Places and Manner of holding Elections for Senators and Representatives, shall be

prescribed in each State by the Legislature thereof; . . . ."  U.S. Const. art. I, § 4, cl. 1.  The

*Lance* plaintiffs' claim was, in essence, a disingenuous extraction from an allegedly erroneous

judicial determination that supposedly violated a provision of the Constitution not even intended

to protect or to benefit them directly.

In contrast, the rights at issue here under the Guarantee Clause and the Enabling Act speak to the very nature of representative democracy and, necessarily, of the role and rights of citizens in a Republican Form of Government.  Plaintiffs ask for the vindication of those rights, violations of which are alleged in the Complaint and will be demonstrated by evidence in the case on the merits.

Plaintiffs acknowledge that the harm suffered by each of them under TABOR is shared and suffered by all citizens of Colorado.  This harm is akin to the harm found sufficient for standing in *Flast v. Cohen*, 392 U.S. 83 (1968).  There the Supreme Court allowed taxpayer standing to enforce the Establishment Clause of the United States Constitution.  *See id*. at 102-07.

The violations of the Guarantee Clause and the Enabling Act in this case, like the Establishment Clause violation in *Flast*, cause a harm that is both shared by every citizen and is concrete and particularized in each one of them.  The standing analysis in *Flast* suggests the appropriate analysis of the instant case:  "in ruling on standing, it is both appropriate and necessary to look to the substantive issues for another purpose, namely, to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated."  *Id.* at 102.  This rationale is at work in *Largess* and explains the *Largess* court's reliance on *Flast. See Largess,* 373 F.3d at 225.

*Largess* – itself a Guarantee Clause case – provides especially pertinent authority that this case should proceed on the merits.  Like *Largess*, this case presents an instance where the "standing issue is intertwined and inseparable from the merits of the underlying claim."  *See id.* at 224.  The *Largess* court acknowledged that Guarantee Clause cases such as this are unique and therefore the standing inquiry must be adjusted to take account of that intertwining and

inseparability: "If the plaintiffs are correct that the Guarantee Clause extends rights to individuals in at least some circumstances, then the usual standing inquiry – which distinguishes between concrete injuries and injuries that are merely abstract and undifferentiated – might well be adjusted to the nature of the claimed injury." *Id.* at 225 (citing *Flast,* 392 U.S. at 105-06).

The citizen Plaintiffs' standing in this case is further supported by the Tenth Circuit's decision in *Walker*, 450 F.3d 1082.   In *Walker,* wildlife groups claimed that a Utah state constitutional amendment imposing a supermajority voting requirement for wildlife management initiatives violated their First Amendment right of free speech, *see id.* at 1085, and that the amendment had "a chilling effect on [the plaintiffs'] speech in support of wildlife initiatives in Utah." *See id.* at 1088.

The plaintiffs in *Walker* contended that this First Amendment injury established their standing to assert the claim. *See id.*  The Tenth Circuit agreed and found that the chilling effect on plaintiffs' speech was a cognizable injury-in-fact as long as it arose from an objectively justified fear of real consequences. *See id.*  The *Walker* court accepted plaintiffs' claim that they were not currently pursuing initiatives due to the supermajority requirement, and this was sufficient to establish standing. *Id.* at 1090.  Here, the citizen Plaintiffs claim a comparable injury on account of the denial of their political rights to a Republican Form of Government under the Guarantee Clause and the Enabling Act, as well as of their equal protection rights under the Fourteenth Amendment. *See* Complaint, Counts I, II and IV, ¶¶ 82, 83, 85.

Plaintiffs also base their claims on a federal statute, the Enabling Act.  No such federal statutory claim was present in *Lance*.  Federal courts routinely interpret the constitutionality of federal statutes. *Branson II* is strong precedent for citizen standing based on the Enabling Act. *See Branson v. Romer*, 161 F.3d 619 (10th Cir. 1998).

Although the Tenth Circuit in *Branson II* refrained from engaging in a thorough standing analysis, it did affirm the lower court's decision.  The District Court's opinion offers more insight on this issue.  In *Branson v. Romer*, 958 F. Supp. 1501 (D. Colo. 1997) ("*Branson I*"), *aff'd*, 161 F.3d 619 (10th Cir. 1998), the District Court found that the plaintiffs had standing to enforce the terms of the Enabling Act on grounds similar to those asserted here.  *See id.* at 1509-11.  The *Branson* plaintiffs claimed that the language of a Colorado constitutional amendment violated the express terms of the Enabling Act relating to the land trust.  *See id.* at 1506.  So here, Plaintiffs allege that TABOR violates the express terms of the Enabling Act relating to the guarantee of a Republican Form of Government.  *See* Complaint, Count II, ¶ 83.

In *Branson I*, the court found that the plaintiffs had standing because "[t]he genesis of plaintiffs' case is that by implementing a state constitutional measure that contradicts the terms of the Colorado Enabling Act, the defendants have violated the United States Constitution. . . . private parties are clearly permitted to maintain actions based on the Supremacy Clause."  *Id*. at 1511.  This is particularly pertinent to the Supremacy Clause argument in this case.  *See* Complaint, Count III, ¶ 84.

By affirming *Branson I*,  *Branson II* is clear precedent to support standing in this case for Plaintiffs' challenge to TABOR.  Under the Supremacy Clause, U. S. Const. art. VI, § 2, it is axiomatic that TABOR must yield to the superior provisions of the Guarantee Clause and the Enabling Act.

TABOR has robbed Plaintiffs of a Republican Form of Government and all of its inherent rights and privileges.  Plaintiffs cannot go to their representatives with many important concerns about governance and policy, because TABOR makes such requests futile.  *See* TABOR §§ 3, 4, 7, 8, 9.  Because TABOR places critical policy changes off-limits, those representatives are so

constrained they cannot fully serve their constituents.  The Guarantee Clause of the United States

Constitution and the Enabling Act are designed to ensure an effective system of representation;

TABOR is designed to ensure the contrary.

**QUESTION 3.  ARE THE PLAINTIFFS PURSUING A THEORY THAT THE PLAINTIFFS WHO ARE EDUCATORS HAVE STANDING TO PURSUE THIS ACTION IN THAT CAPACITY, AS SUGGESTED IN THE OPERATIVE COMPLAINT (ECF NO. 36, ¶ 45)?**

**QUESTION 4.  IF THE ANSWER TO QUESTION (3) IS YES, WHAT LEGAL AUTHORITY EXISTS IN SUPPORT OF AND/OR AGAINST THE PROPOSITION THAT THOSE PLAINTIFFS HAVE STANDING *QUA* EDUCATORS?**

Certain Plaintiffs are individuals involved in Colorado public education, including

Plaintiff Kerr and other teachers in Colorado public schools, parents of students enrolled in

Colorado public schools, a member of the Colorado Board of Education, and members of various

local Boards of Education (the "Educator-Plaintiffs").  *See* Complaint, ¶¶ 10, 13, 15, 21, 23, 24,

26, 27, 33, 42.  These Educator-Plaintiffs assert that TABOR – by nullifying the General

Assembly's power to establish different or expanded revenue streams for state and local school

districts – has harmed each of them by denying them the effective offices contemplated under a

Republican Form of Government to address and to advance public education with increased

revenue and appropriations.  *See* TABOR §§ 3, 4, 7, 8, 9.

The right to a Republican Form of Government is guaranteed to the Educator-Plaintiffs

by the Guarantee Clause and the Enabling Act.  Further, the Education Clause under Article IX,

Section 2 of the Colorado Constitution requires the General Assembly to provide for the

maintenance of a "thorough uniform system of free public schools throughout the state."  Colo.

Const. art. IX, § 2.

As explained above relative to the citizen Plaintiffs, TABOR has so constrained the

Colorado General Assembly's execution of this responsibility that the Educator-Plaintiffs have

no recourse to petition their representatives to advance state education through increased revenue and appropriations.  *See supra* pp. 13-14.  On the local level, TABOR also prevents the Educator-Plaintiffs from using local taxation to raise revenue for school districts, the customary means to provide for public school funding.  *See* TABOR §§ 3, 4, 7, 8, 9.

     Defendant has asserted that TABOR would prevail over any right guaranteed under the Education Clause of the Colorado Constitution[4] and has conceded, for purposes of the Defendant's Motion to Dismiss, that TABOR has rendered the General Assembly unable to perform its essential functions.[5]  Assuming *arguendo* that these are correct statements of the law,

---

[4] Defendant made this admission in Def.'s Mot. for Determination of Questions of Law, *Lobato v. State*, No. 05 CV 4794 (District Court for the City & County of Denver, filed Feb. 25, 2011):

> [w]hatever the meaning of the Education Clause [of the State Constitution] as originally adopted, its reach has been limited by the People's subsequent actions. . . . This maxim precludes reading the Education Clause in isolation; rather, it must be construed in concert with . . . the TABOR amendment.  Even if this Court were to find an irreconcilable conflict between these constitutional provisions, TABOR prevails.

[5] The following exchange occurred between counsel for the Defendant and Magistrate Judge Boyd N. Boland in a hearing on November 15, 2011, on the Plaintiffs' Motion to Amend Minute Order Relating to Disclosures Under Rule 26(a)(1)(A) (ECF No. 43):

> *Ms. Rundlet*: This is a political question because it involves the Guarantee clause and whether or not TABOR violates a Republican form of government.  It is not necessary for the Court to hear additional facts because the motion to dismiss has been filed.  All of the facts that are pleaded are considered to be true.

> *The Court*: So, you agree that TABOR has deprived the legislature of its ability to perform its essentially function?

> *Ms. Rundlet*: The Court must assume that all facts, all reasonably well-pled facts in the complaint are true.  So, in this situation when determining whether or not it considered the motion, it can consider this political question, yes.  It must be considered true.  Still, the fact that it may violate a Republican form of government does not make it a justiciable question.  It is still a question that's been committed to Congress.

Transcript of Hearing at 19:4-21, *Kerr v. Hickenlooper*, 11-cv-01350-WJM-BNB (D. Colo. argued Nov. 15, 2011).

TABOR presents not just a chilling effect, but an actual nullification of the Educator-Plaintiffs'

ability to employ the General Assembly or other local governmental bodies to maintain a

uniform system of public schools throughout the state.  TABOR nullifies the General

Assembly's power to advance educational interests through taxation, *and* it purports to supersede

the Education Clause, presenting a double curtailment of Educator-Plaintiffs' constitutional

rights.[6]

To establish standing, the Educator-Plaintiffs "must allege . . . that they have suffered an

'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendant(s), and

that it is redressable by a favorable decision."  *Walker*, 450 F.3d at 1087.  As discussed above,

*supra* p. 12, the Tenth Circuit endorsed the *Walker* plaintiffs' contention that their First

Amendment injury established their standing to assert the claim.

The Tenth Circuit discussed *Walker* in a subsequent standing case – *Day v. Bond*, 500

F.3d 1127 (10th Cir. 2007).  In *Day*, the Court explained the legal principle that standing should

be found when the standing inquiry is intertwined with the substantive merits of a constitutional

claim:

> The merits issue [in *Walker*] was whether the First Amendment
> restricted states' abilities to impose supermajority requirements for
> certain initiatives.  The answer to that question would necessarily
> resolve the standing issue . . . .  If the First Amendment had the
> scope claimed by the plaintiffs, then the plaintiffs' First

---

[6] For purposes of deciding the Defendant's Motion to Dismiss, the injury sustained by Educator-Plaintiffs is substantiated by the decision in *Lobato v. State,* No. 05 CV 4794 (Dist. Ct. for the City & County of Denver Dec.  9, 2011).  However, TABOR precludes Plaintiffs who are legislators and school board members from remedying the education shortfalls found by District Court Judge Sheila A. Rappaport.  The Defendant has admitted as much in Defendant's Notice of Appeal in *Lobato*, Notice of Appeal at 2, 3, 6, *Lobato v. State*, Case No. 12SA ___ (Colo. Notice of Appeal filed Jan. 23, 2012), available at www.coloradoattorneygeneral.gov/sites/default/files/Notice%20of%20Appeal.pdf.

Amendment rights would necessarily be violated. . . . In *Walker*, the plaintiffs' asserted injury and their claimed constitutional violation were one and the same. Accordingly, we refused to consider, at the threshold stage of determining standing, whether the First Amendment did or did not restrict supermajority requirements for certain initiative efforts. *Id.* at 1093. That question must be reserved for the merits analysis. *See id.* at 1098-1105. . . . *Walker* mandates that we assume, during the evaluation of the plaintiff's standing, that the plaintiff will prevail on his merits argument – that is, that the defendant has violated the law. *See id.* ("For purposes of standing, we must assume the [p]laintiffs' claim has legal validity.").

*Id.* at 1137.

The Tenth Circuit's reasoning in *Walker,* as explained in *Day,* and the First Circuit's standing analysis in *Largess* are harmonious and apply well to the facts here. *Walker* and *Largess* found that the merits of the respective plaintiffs' constitutional claims were inextricably intertwined with the alleged standing injury. Likewise, whether the Educator-Plaintiffs have standing under the Guarantee Clause requires a merits-based examination of whether the Guarantee Clause confers the rights the Plaintiffs claim were violated. In this case, the standing claims of the Educator-Plaintiffs, as well as those of the citizen Plaintiffs, are inextricably intertwined with the merits of their Guarantee Clause claims. The Court may properly adopt a *Walker*/*Largess* analysis to find standing here for the Educator-Plaintiffs and for Plaintiffs as citizens.

**QUESTION 5. IF THE COURT WERE TO CONCLUDE THAT PLAINTIFFS' OPERATIVE COMPLAINT CONTAINS INSUFFICIENT FACTUAL ALLEGATIONS REGARDING STANDING, WOULD THE PROPER COURSE OF ACTION FOR THE COURT BE TO DISMISS THE OPERATIVE COMPLAINT, OR TO GRANT PLAINTIFFS LEAVE TO FURTHER AMEND THE OPERATIVE COMPLAINT INSOFAR AS THEIR ALLEGATIONS PERTAINING TO STANDING ARE CONCERNED?**

As argued above, the standing question may be so "inextricably intertwined" with the merits that the Court may wish to examine the merits and standing together. *See Largess*, 373

F.3d at 224; *Walker*, 450 F.3d at 1089.[7]  The Court need not adjudicate the merits as part of its

standing inquiry nor determine whether Plaintiffs actually have the rights claimed to be violated

by TABOR.  Rather, the Court must assume their claims are valid (*i.e.*, that the Complaint's

legal grounds for relief provide Plaintiffs with concrete rights and interests in a Republican Form

of Government).  *See Walker*, 450 F.3d at 1093.

     In any event, the Court has the authority to grant Plaintiffs leave to amend their

Complaint to cure any defects in standing allegations.  *See* Fed. R. Civ. P. 15(a); *Brereton v.*

*Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  In the event the Court (1) does not

find that the Complaint establishes standing, or (2) that the merits are not so inextricably

intertwined with the merits that these issues may be jointly considered, the Court should grant

them leave to amend their Complaint.  *See, e.g., Stewart v. Norton*, No. 2:06 CV 209, 2006 WL

3305409, at *6 (D. Utah Sept. 29, 2006) (granting plaintiffs "leave to amend their complaint to

add the necessary allegations of injury"); *D'Agnillo v. U.S. Dep't of Hous. & Urban Dev.*, 738 F.

Supp. 1443, 1448-49 (S.D.N.Y. 1990) (granting leave to amend complaint to satisfy standing

requirements in response to Rule 12(b)(1) motion).

     Plaintiffs stand ready to provide the Court with extensive and detailed accounts of the

various ways TABOR has deprived them of a Republican Form of Government and the

---

[7] Various courts have decided standing and merits issues as part of a single inquiry.  *See City of*
*Revere v. Mass. Gen. Hospital*, 463 U.S. 239, 243 n.5 (1983) ("[W]e could not resolve the
question whether MGH has third-party standing without addressing the constitutional issue. . . .
Both the standing question and the merits depend in part on whether injured suspects will be
deprived of their constitutional right to necessary medical care unless the governmental entity is
required to pay hospitals for their services.") (citing *Holtzman v. Schlesinger*, 414 U.S. 1316,
1319 (1973)); *Holtzman v. Schlesinger*, 414 U.S. 1316, 1319 (1973) (Douglas, J., in chambers)
("*If applicants are correct on the merits they have standing as taxpayers*. The case in that
posture is in the class of those where standing and the merits are inextricably intertwined.")
(emphasis added); *Davis v. Astrue*, Nos. C–06–6108, 2012 WL 465105, at *11 (N.D. Cal. Feb.
13, 2012); *HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036, 1039 (D. Haw. 2009).

consequences of that deprivation.  The Court may also choose to grant Plaintiffs leave to amend the Complaint and to supplement it with additional factual allegations regarding their injuries.

In addition, the Court has discretion to consider additional standing evidence as part of its authority to consider factors bearing on its subject matter jurisdiction.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 184 (1936) ("The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, 'inquire into the facts as they really exist.'" (citations omitted));  *S. Utah Wilderness Alliance v. Palma,* No. 2:07-CV-00199, 2011 WL 2565198, at *2-6 (D. Utah Apr. 4, 2011) (considering supplemental briefs and plaintiff declarations to decide standing in resolving facial 12(b)(1) motion to dismiss); *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 452-53 n.13 (S. D. W. Va. 2000) (considering affidavit submitted with supplemental brief in resolving standing issue under 12(b)(1)).  Such supplemental evidence pertinent to standing could be useful in the event of appellate review.

Only if the Court refuses to entertain any of the above possibilities should it consider dismissing the Complaint in this action.  Such dismissal would necessarily be without prejudice. *See* Fed. R. Civ. P. 41(b); *Brereton*, 434 F.3d at 1216.  The result would be the same if the Court denies leave to amend.  *See Brereton*, 434 F.3d at 1219 ("A denial of leave to amend to repair a jurisdictional defect, even on futility grounds, does not call for a dismissal with prejudice."); *D'Agnillo*, 738 F. Supp. at 1448-49 (granting leave to amend complaint to satisfy standing requirements in response to Rule 12(b)(1) motion).  However, dismissal and re-filing would not be a prudent use of the parties' or the Court's resources.

Respectfully submitted this 16th day of March, 2012.

/s/ Lino S. Lipinsky de Orlov
Lino S. Lipinsky de Orlov
Herbert Lawrence Fenster
David E. Skaggs
MCKENNA LONG & ALDRIDGE LLP
1400 Wewatta Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail:hfenster@mckennalong.com
llipinsky@mckennalong.com
dskaggs@mckennalong.com

Michael F. Feeley
John A. Herrick
Emily L. Droll
BROWNSTEIN HYATT FARBER SCHRECK LLP
410 17th Street, Suite 2200
Denver, CO 80202-4437
Telephone: (303) 223-1100
Facsmile: (303) 223-1111
E-mail:mfeeley@bhfs.com
jherrick@bhfs.com
edroll@bhfs.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March, 2012, a true and correct copy of the foregoing **PLAINTIFFS' BRIEF IN RESPONSE TO THE COURT'S ORDER FOR BRIEFING ON QUESTIONS REGARDING STANDING** was electronically filed with the clerk of the court using the CM/ECF system, which will send notification of such filing to the following:

Daniel Domenico, Esq.
Colorado Solicitor General
dan.domenico@state.co.us

Bernie Buescher, Esq.
Colorado Deputy Attorney General
bernie.buescher@state.co.us

Maurice Knaizer, Esq.
Colorado Assistant Deputy Attorney General
maurie.knaizer@state.co.us

Megan Paris Rundlet, Esq.
Colorado Assistant Attorney General
megan.rundlet@state.co.us

David B. Kopel, Esq.
Independence Institute Amicus Curiae
david@i2i.org

Melissa Hart, Esq.
University of Colorado Law School Amicus Curiae
melissa.hart@colorado.edu

*/s/ Lisa F. King*

DN:32223998.6