**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-1350-WJM-BNB

ANDY KERR, Colorado State representative;
NORMA V. ANDERSON;
JANE M. BARNES, Member, Jefferson County Board of Education;
ELAINE GANTZ BERMAN, Member, State board of Education;
ALEXANDER E. BRACKEN;
WILLIAM K. BREGAR, Member, Pueblo District 70 Board of Education;
BOB BRIGGS, Westminster City Councilman;
BRUCE W. BRODERIUS, Member, Weld County District 6 Board of Education;
TRUDY B. BROWN;
JOHN C. BUECHNER, PH.D., Lafayette City Councilman;
STEPHEN A. BURKHOLDER;
RICHARD L. BYYNY, M.D.;
LOIS COURT, Colorado State Representative;
THERESA L. CRATER;
ROBIN CROSSAN, Member, Steamboat Springs RE-2 Board of Education;
RICHARD E. FERDINANDSEN;
STEPHANIE GARCIA, Member, Pueblo City Board of Education;
KRISTI HARGROVE;
DICKEY LEE HULLINGHORST, Colorado State Representative;
NANCY JACKSON, Arapahoe County Commissioner;
WILLIAM G. KAUFMAN;
CLAIRE LEVY, Colorado State Representative;
MARGARET (MOLLY) MARKERT, Aurora City Councilwoman;
MEGAN J. MASTEN;
MICHAEL MERRIFIELD;
MARCELLA (MARCY) L. MORRISON;
JOHN P. MORSE, Colorado State Senator;
PAT NOONAN;
BEN PEARLMAN, Boulder County Commissioner;
WALLACE PULLIAM;
FRANK WEDDIG, Arapahoe County Commissioner;
PAUL WEISSMANN; and
JOSEPH W. WHITE;

        Plaintiffs,
  v.

JOHN HICKENLOOPER, GOVERNOR OF COLORADO, in his official capacity,

        Defendant.

### REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR CERTIFICATION OF THE COURT'S JULY 30, 2012 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Defendant John Hickenlooper, Governor of Colorado, by and through undersigned counsel, submits the following Reply Brief in support of Defendant's Motion for Certification of the Court's July 30, 2012 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

### INTRODUCTION

Plaintiffs' Response in Opposition to Defendant's Motion for Certification highlights the reasons why this Court should certify its July 30, 2012 Order for interlocutory appeal. Plaintiffs, for example, repeatedly assert that the justiciability of their claims turns on disputed facts. But they fail to identify what those disputed facts are, instead emphasizing various disputed *legal* arguments that are entirely appropriate for resolution now, on the current record. Additionally, Plaintiffs concede that governing case law in this area is sparse, ignoring that this alone is a compelling reason for an interlocutory appeal. The questions posed to the Court—those that require an answer from the Tenth Circuit—are appropriate for certification under 28 U.S.C. § 1292(b).

Plaintiffs are, however, correct that the Court should not certify the Order simply because the Governor disagrees with it. The Court should certify the Order because this case satisfies each criterion of § 1292(b). Moreover, certification is necessary because, regardless of the outcome in the Tenth Circuit, the resolution of the various threshold legal questions presented by the Order will either (1) dispose of the case entirely or (2) narrow the issues to be litigated and provide legal standards to guide these proceedings. Either way, an interlocutory appeal will avoid protracted and expensive

litigation—the very reason § 1292(b) provides for interlocutory appeals in the first instance.

## ARGUMENT

### I.     The Court's Order turns on purely legal questions.

Plaintiffs repeatedly assert that this case requires resolution of various "factual issues," making the Court's Order a poor candidate for certification. Resp. at 5–7, 9. But the factual disputes Plaintiffs identify are not really factual—they are, instead, legal questions. Perhaps the best example is on page 6 of the Response. There, Plaintiffs identify three of "the complex and important questions of law and fact presented in this case": (1) "the meaning of the Guarantee Clause," (2) "its implications regarding necessary powers of the legislature," and (3) "TABOR's infringement on those necessary powers." *Id.* at 6. The answers to these questions depend not on the resolution of facts, but on the legal interpretation of two legal texts: TABOR and the Guarantee Clause. It is undisputed that TABOR requires a popular vote on certain matters of taxation and that without TABOR, the legislature would have power to increase taxes without voter approval. Whether this voting requirement amounts to a justiciable claim under the Guarantee Clause turns solely on what the Guarantee Clause means. On interlocutory appeal, the Tenth Circuit will have the opportunity to address these legal questions, in the very least providing guidance as to how Plaintiffs might be able to prove a violation of the Guarantee Clause if this litigation proceeds.

By definition, threshold questions about standing and justiciability can, and must, be determined early in the litigation. As the Supreme Court has observed, certification under § 1292(b) "often involve[s] threshold procedural issues not requiring extensive analysis of the record." *See Tidewater Oil Co. v, United States*, 409 U.S. 151, 171–72

Case 1:11-cv-01350-WJM-BNB   Document 90   Filed 08/31/12   USDC Colorado   Page 4 of 11

(1972), *superseded on other grounds by statute as stated in United States v. Am. Tel. & Tel. Co.*, 714 F.2d 178, 181 (D.C. Cir. 1983). The point of an interlocutory appeal is to address these threshold issues early, to avoid protracted and expensive litigation. *See Burchett v. Bardahl Oil Co.*, 470 F.2d 793, 796 (10th Cir. 1972) ("The interlocutory order overruling appellant's objection to jurisdiction is properly presented for review under the flexible provisions of 28 U.S.C. § 1292(b) as one in which an interlocutory appeal might avoid protracted and expensive litigation."). Indeed, courts frequently certify questions of standing and justiciability for interlocutory review. *See, e.g.*, *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 656 (4th Cir. 1989) ("Virginia argued that for various reasons VHA's suit is not currently justiciable. The district court disagreed and certified its order for appeal under 28 U.S.C. § 1292(b). We affirm."); *Mottola v. Nixon*, 464 F.2d 178, 179 (9th Cir. 1972) (considering an appeal from "an interlocutory order of the district court . . . denying the government's motion seeking dismissal of plaintiffs' action on the grounds that the plaintiffs lack standing . . . and that the action presents a non-justiciable political question" and concluding "that the plaintiff-appellees lack standing to litigate their action").

Plaintiffs argue against certification by claiming that the factual record is "sparse at best" and the Tenth Circuit could therefore "render only an advisory opinion" that would "risk the development of unsound precedent." Resp. at 7. Plaintiffs' complaint is indeed spare, alleging few facts. But this Court itself was able to issue a decision based on the facts alleged, and Plaintiffs do not claim that this opinion was merely "advisory." This is because, as § 1292(b) requires, the Court's determination of the threshold issues of standing and justiciability involved "controlling questions of law" that do not require

the resolution of factual disputes. Construing Plaintiffs' allegations as true, the Court simply answered the legal questions put to it: whether Plaintiffs have standing, whether the claims present nonjusticiable political questions, and whether Plaintiffs have failed to state claims under the Guarantee Clause and the Enabling Act. The Tenth Circuit, like this Court, does not require any additional facts to determine these threshold questions.

## II.     The limited precedent in this area reveals a substantial difference of opinion.

Plaintiffs correctly argue that the Court should not certify the Order for immediate review simply because it "present[s] unique issues." Resp. at 8. The Governor does not urge this as a basis for an interlocutory appeal. But the questions in this case are "difficult," "there is little precedent" for them and the "correct resolution" of the case "is not substantially guided by previous decisions." *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 226 (D. Colo. 1991). The requirement in § 1292(b) that there be "substantial ground for difference of opinion" is therefore satisfied. *See id.*

It is not so much that Plaintiffs' claims present questions of first impression—indeed, the Governor has argued from the beginning that the Supreme Court considered and rejected equivalent claims in *Pacific States Telephone & Telegraph v. Oregon*, 223

U.S. 118 (1912). But this case would be the first of its kind to be litigated on the merits.[1] As a result, there are few governing standards to frame these proceedings. An interlocutory appeal is necessary because it will provide the parties, and the Court, an idea of what they are litigating about, beyond the monarchy contemplated by the First Circuit in *Largess v. Supreme Judicial Court for the State of Massachusetts*, 373 F.3d 219, 229 (1st Cir. 2004), and the Tenth Circuit's proclamation that the essence of the Guarantee Clause is the right of a State's citizens to "structure their government as they see fit." *Kelley v. United States*, 69 F.3d 1503, 1511 (10th Cir. 1996). These cases imply that Plaintiffs have failed to state a claim, at least within the parameters of existing precedent. The Tenth Circuit should explain why they have, in fact, stated a claim, and what they must prove to establish a violation of the Guarantee Clause.

### III. An interlocutory appeal will materially advance the litigation.

Even if the Tenth Circuit affirms the Order, its decision will narrow the legal issues at stake for the Court and the parties, and it will provide a framework for the parties' factual disputes. Plaintiffs have made clear their intent to conduct massive

---

[1] Following the example of the Supreme Court in *Luther v. Borden*, 48 U.S. 1, 42 (1849), federal courts continue to dismiss Guarantee Clause claims for lack of justiciability. *See, e.g.*, *Van Allen v. Cuomo*, 621 F.3d 244, 249 n.5 (2d Cir. 2010) (denying claims brought under the Guarantee Clause and observing, "the 'Supreme Court traditionally has held that claims brought under the . . . Clause are nonjusticiable'" (quoting *Padavan v. United States*, 82 F.3d 23, 28 (2d Cir. 1996))); *McNutt v. White*, No. NO. 11-CV-148, 2011 WL 3902798, at *5 (W.D. Ky. Sept. 6, 2011) (holding that "the Guarantee Clause presents no justiciable question"); *Corr v. Metro. Wash. Airports Auth.*, 800 F. Supp. 2d 743, 757 (E.D. Va. 2011) (observing that "courts have predictably refused to grant relief under the Guarantee Clause" and dismissing a Guarantee Clause claim); *South Dakota v. U.S. Dep't of Interior*, 787 F. Supp. 2d 981, 992 (D.S.D. 2011) ("Plaintiffs' Guaranty Clause challenge . . . presents a non-justiciable political question."); *Coleman v. Monson*, No. No. 5:10-0535, 2010 U.S. Dist. LEXIS 109771, at *10 (D.S.C. Mar. 29, 2010) ("Moreover, the plaintiff's challenges to state action based on the Guarantee Clause present no justiciable question. . . . Article IV, Section 4 does not contain sufficient standards for a court to utilize in invalidating state action.).

amounts of discovery at all levels of government, including state departments and officials, cities and counties throughout Colorado, school districts, and individual citizens. Under these exceptional circumstances, a decision from the Tenth Circuit will likely result in the avoidance of protracted and expensive proceedings. *See Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (interlocutory appeal is appropriate in "cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions" (quoting S. Rep. No. 2434, 85th Cong., 2d Sess. 1 (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5262)).

Plaintiffs claim that because the Court considered only the standing of the Legislator-Plaintiffs, "a hypothetical reversal by the Court of Appeals . . . would result only in a remand for a *de novo* determination of the standing of other plaintiffs." Resp. at 10–11. Yet all the plaintiffs in this case claim that their injuries each derive from the same legal issue—whether the unambiguous provisions of TABOR amount to a violation of the Guarantee Clause. Moreover, the Governor has always maintained that the allegations of the complaint, even if true, would not grant *anyone* standing to sue in federal court.[2] The Tenth Circuit can resolve this legal question now, providing guidance to the Court and the parties as to how this case should proceed.

---

[2] Plaintiffs assert that "Defendant for the first time argues . . . that plaintiffs have not sued the proper party." Resp. at 12. This is incorrect. The Governor has repeatedly challenged the ability of Plaintiffs to bring their claims, because the guarantees in the Guarantee Clause and the Enabling Act are made between the *United States* and the State—not between the State and its People. Although Plaintiffs did substitute Governor Hickenlooper for the State of Colorado as defendant in this case once counsel informed Plaintiffs that the State would move to dismiss the case under the Eleventh Amendment, the Governor never conceded that he was the proper Defendant. Nor could he: parties cannot waive the jurisdictional requirement of standing. *Lewis v. Casey*, 518 U.S. 343, 414 (1996) ("[S]tanding . . . is jurisdictional and not subject to waiver.").

Plaintiffs also argue that a decision on the Guarantee Clause claim would not resolve their Enabling Act claim, which, according to Plaintiffs, involves the "familiar judicial exercise" of interpreting a statute. Resp. at 11. Yet the Enabling Act says only that Colorado's government "shall be republican in form" and shall "not be repugnant to the constitution of the United States." That merely impels the question: what is a "republican form of government"?[3] This legal question must be answered by the Court first before it can proceed to the "familiar judicial exercise" of construing the Enabling Act and determining whether TABOR violates that statute.[4] An interlocutory appeal will allow the Tenth Circuit to clarify whether the guarantees in the Enabling Act and the

---

[3] Indeed, in *Pacific States*, the Supreme Court dismissed a similar Enabling Act claim. The plaintiffs there claimed that a voter initiative "incapacitated the state from performing the duties incumbent upon it as a member of the Union of its obligations towards its citizens, thus causing the state to cease to be a government republican in form." 223 U.S. at 140. The Supreme Court dismissed the Enabling Act claim along with the plaintiffs' other claims because the statutory claim depended on a determination of what constitutes a republican government—a question that the Supreme Court held was committed to Congress and not the judiciary.

[4] Moreover, no case—not even *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421 (2012), on which Plaintiffs heavily rely—declares that political questions can arise solely from constitutional challenges, and never from statutory challenges. In *Zivotofsky*, the Court held that a statutory claim was justiciable because it did not require the Court to determine the question of Jerusalem's political status. Instead, the claim merely required the Court to determine whether Zitvotofsky "may vindicate his statutory right, under § 214(d), to choose to have Israel recorded on his passport as his place of birth." *Id.* The Supreme Court rejected the political question argument precisely because it was *not being asked* to make a particular political determination. Instead, it was tasked solely with the statutory construction of the federal passport law at issue.

Unlike the claim in *Zivotofsky*, the very nature of Plaintiffs' statutory claim involves a political question: the Enabling Act merely repeats the requirements of the Guarantee Clause. *Cf. Pacific States*, 223 U.S. at 136–37 ("The entire matters covered . . . are reduced to six propositions, which really amount to but one, since they are all based upon the single contention that [initiative and referendum lawmaking] causes the prior lawful state government to be bereft of its lawful character as the result of the provisions of § 4 of Art. IV of the Constitution . . . .").

Guarantee Clause are identical or somehow different—yet another issue in this litigation that can be settled at this early stage.

## IV.     A decision by the Tenth Circuit—affirming or reversing—is necessary to frame this case.

Since no case like this has been decided on the merits, the Court should allow the Tenth Circuit to tell it and the parties what the Guarantee Clause means in a justiciable case—that is, what standards should govern this litigation. Here, immediate appellate review under § 1292(b) is the most efficient and appropriate way to proceed. "[T]here are occasions . . . in which as a practical matter orderly administration is frustrated . . . while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure, upon which in a realistic way the whole case or defense will turn." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961). Plaintiffs' claims present questions "on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." *In re Grand Jury Proceeding June 1991*, 767 F. Supp. at 226. Interlocutory appeal is the only way to achieve some level of legal clarity early in these proceedings, before Plaintiffs begin their massive discovery campaign.

## CONCLUSION

For these reasons, the Governor respectfully requests that the Court certify its July 30, 2012 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

*s/ Megan Paris Rundlet*

DANIEL D. DOMENICO
Solicitor General
BERNIE BUESCHER
Deputy Attorney General
MAURICE G. KNAIZER
Assistant Deputy Attorney General
KATHLEEN SPALDING
Senior Assistant Attorney General
MEGAN PARIS RUNDLET
Assistant Attorney General

1525 Sherman Street, 7th Floor
Denver, CO 80203
Telephone: 303-866-5163
Facsimile: 303-866-5443

E-Mail:
 dan.domenico@state.co.us
 bernie.buescher@state.co.us
 maurie.knaizer@state.co.us
 kit.spalding@state.co.us
 megan.rundlet@state.co.us

*Attorneys for Defendant, Governor of Colorado*

**CERTIFICATE OF SERVICE**

This is to certify that on this 31st day of August, 2012, I electronically filed the herein Reply Brief in support of Defendant's Motion for Certification of the Court's July 30, 2012 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following attorneys:

David Evans Skaggs
McKenna Long & Aldridge, LLP
1400 Wewatta Street #700
Denver, CO 80202-5556

John A. Herrick
Brownstein Hyatt Farber Schreck, LLP
410 17th Street #2200
Denver, CO 80202-4432

Emily L. Droll
Brownstein Hyatt Farber Schreck, LLP
410 17th Street #2200
Denver, CO 80202-4432

Lino S. Lipinsky de Orlov
McKenna Long & Aldridge, LLP
1400 Wewatta Street #700
Denver, CO 80202-5556

Herbert Lawrence Fenster
McKenna Long & Aldridge, LLP
1400 Wewatta Street #700
Denver, CO 80202-5556

Michael F. Feeley
Brownstein Hyatt Farber Schreck, LLP
410 17th Street #2200
Denver, CO 80202-4432

Geoffrey W. Williamson
Brownstein Hyatt Farber Schreck, LLP
410 17th Street #2200
Denver, CO 80202-4432

*Kathleen Spalding*
_____